UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

05 - 11824 REK    Civil Action No.

PAUL O'MARA and NEAL O'MARA )
                Plaintiffs, )
                             )    Bowler MJ
v.                           )
                             )
                             )
MARK J. DONNELLY,            )
SEBAGO PARTNERS, INC, and    )
UCOMPAREHEALTHCARE, LLC      )
                             )    RECEIPT #
                             )    AMOUNT $
           Defendants.       )    SUMMONS ISSUED
                             )    LOCAL RULE 4.1
_____)    WAIVER FORM
                                  MCF ISSUED
                                  BY DPTY. CLK.
                                  DATE

## COMPLAINT

Plaintiffs Paul O'Mara and Neal O'Mara (collectively referred to herein as the

"Plaintiffs" or "the O'Maras") assert claims against Defendants arising under the Copyright laws

of the United States, 17 U.S.C. §§ 101, *et seq.* with respect to software design and development

works created by the O'Maras. Plaintiffs also assert supplemental claims arising under state law

which are so related to the Copyright claims that they form part of the same case or controversy.

### Parties and Personal Jurisdiction

1.    Plaintiff Paul O'Mara is an individual residing at 31 Boudreau Ave., Marlborough,

Middlesex County, Massachusetts. Paul O'Mara is a highly skilled software designer and

developer, with experience in Technical Writing and Programming.

2.    Plaintiff Neal O'Mara is an individual residing at 12221 Papaya Ct NE,

Albuquerque, NM 87111. Neal O'Mara is a highly skilled software programmer.

3.    Defendant Mark J. Donnelly ("Donnelly") is an individual residing at 406 Windsor

Drive, Framingham, Middlesex County, Massachusetts. Upon information and belief, Donnelly

is the President of Defendants Sebago Partners, Inc., is the Manager and sole member of UCompareHealthCare, LLC., and is the sole owner of interests in such entities.

4.    Defendant Sebago Partners, Inc. is a Maine corporation with a principal place of business in Framingham, Middlesex County, Massachusetts.

5.    Defendant UCompareHealthCare, LLC ("UCHC") is a Maine limited liability company with a principal place of business in Framingham, Middlesex County, Massachusetts. UCHC, by its counsel, has asserted that it is the successor in interest to Sebago Partners, Inc.

## Subject Matter Jurisdiction and Venue

6.    This case is a civil action arising under the Copyright laws of the United States, 17 U.S.C. §§ 101, *et seq.* This Court has subject matter jurisdiction of this action pursuant to 17 U.S.C. § 501, 28 U.S.C. §1338(a), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a) in that the claims are so related to claims with such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.    Venue is proper pursuant to 28 U.S.C. §1391(b)(1), (b)(2) and (c) and 28 U.S.C. § 1400 in that the individual Defendant resides in this district, a substantial part of the events or omissions giving rise to the claims occurred in this district, and the corporate Defendants have principal places of business and transact business in this district and are subject to personal jurisdiction in this district.

## Facts

8.    In or about June 2004, Donnelly and Paul O'Mara entered into an agreement for the development of Laundry Management computer software programming (the "Laundry Management Software") that would manage day-to-day Laundromat operations including utility

2

usage, machine maintenance, coin count tracking, and related matters. Pursuant to that agreement, Donnelly and Paul O'Mara agreed that Donnelly would receive 80% of the proceeds from the Laundry Management Software and that Paul O'Mara would receive 20% of the proceeds. Donnelly represented that he would prepare a written document to memorialize the parties' agreement.

9.    During the time period from June through October, 2004, Paul O'Mara worked approximately 330 hours on the development of the Laundry Management Software, including the development, creation, and authoring of original source code. Upon information and belief, Donnelly worked less than 20 hours on this project. Donnelly did not develop, create, or author any of the source code.

10.   Donnelly and O'Mara scheduled a meeting for September 16, 2004 to review Paul O'Mara's work on the Laundry Management Software and to review and discuss a draft written document memorializing the parties' agreement regarding proceeds from the Laundry Management Software. Donnelly specifically represented that he would prepare a draft of that agreement for discussion at the meeting.

11.   Donnelly and Paul O'Mara met at Donnelly's residence on September 16, 2004. Contrary to his representation, Donnelly did not present a draft agreement memorializing the parties' agreement regarding the proceeds of the Laundry Management Software. Donnelly instead discussed a new venture for the creation of an on-line health care service to facilitate objective comparisons of physicians, hospitals, and nursing homes for consumers and human resource managers. Donnelly represented that this venture was a bigger opportunity.

12.   At that meeting, Donnelly presented Paul O'Mara with a document entitled "Confidentiality / Proprietary Information Agreement" (hereby referred to as the "Confidentiality

3

/ Proprietary Information Document (Paul O'Mara)", a true and accurate copy of which is attached hereto as Exhibit 1) and requested that Paul O'Mara sign such document.

13. Donnelly (individually and on behalf of Sebago Partners) and Paul O'Mara entered into an agreement pursuant to which Paul O'Mara agreed to perform certain software design and development and related services in connection with the new venture (an entity now known as UCompareHealthCare LLC), and Donnelly (individually and upon information and belief on behalf of Sebago Partners) agreed to issue to Paul O'Mara 2.5% of the voting stock in UCHC upon the incorporation of such entity and an additional 10% of such stock at a later time.

14. Donnelly and Paul O'Mara further agreed that, upon completion of the "feasibility" phase (namely the development of a prototype of the software), Donnelly and Sebago Partners would cause their counsel to prepare and issue formal written documents incorporating the business and issuing stock in accordance with the parties' agreement.

15. Paul O'Mara commenced work on the new health care venture in September, 2004, including preparation of software specifications, proposals, and source code.

16. In or about October, 2004, Donnelly terminated further development of the Laundry Management Software. At that time, the Laundry Management Software was approximately 90% complete.

17. Donnelly, Paul O'Mara, and others (generally including Jeff LaPointe, Brian Richardson, and Ryan Donnelly, who is the son of Mark Donnelly) commenced regular meetings regarding the health care venture on an approximately weekly or bi-weekly basis as of October 28, 2004. The initial meetings took place near Donnelly's residence in Framingham, Massachusetts. Subsequent meetings took place at UCHC's offices in Marlborough and in Framingham, Massachusetts.

4

' 18. Pursuant to those meetings, the individuals agreed that decisions regarding the new venture would be made by majority vote of Donnelly, Paul O'Mara, Jeff LaPointe, Brian Richardson, and Ryan Donnelly, each of which would have one vote.

19. Donnelly and Sebago Partners, by their counsel, notified Paul O'Mara at a meeting on November 4, 2004 that the new entity would be incorporated as "UCompareHealthCare, Inc." and that they had registered the name "UCompareHealthCare.com" for the corporation's website. Donnelly and Sebago Partners, by their counsel, also presented Paul O'Mara with a document entitled "Sebago Partners, Inc." (hereby referred to as the "Sebago Partners, Inc. Document (Paul O'Mara)" a true and accurate copy of which is attached hereto as Exhibit 2). The document did not purport to set forth any agreement about an assignment of copyrights. Donnelly's and Sebago Partner's counsel stated at the meeting that the Sebago Partners, Inc. Document "covered ownership of inventions." In response to questions about the document and whether it applied to the types of works that Paul O'Mara had produced prior to November 4, counsel responded that the parties had not invented anything yet.

20. The Sebago Partners, Inc. Document (Paul O'Mara) sets forth certain provisions which are stated to be "[i]n consideration for [Paul O'Mara's] engagement as an independent contractor by [Sebago Partners]."

21. In order to induce Paul O'Mara to execute the Sebago Partners, Inc. Document (Paul O'Mara), Sebago Partners and Donnelly further promised and agreed to pay Paul O'Mara at a rate which was comparable to his then full time salary for his "day job." The parties agreed that such payment was in addition to the equity interest to be received by Paul O'Mara. The parties subsequently agreed that Paul O'Mara would be paid at the rate of $1,000 per week.

5

' 22. Sebago Partners, by Donnelly, and Paul O'Mara executed the Sebago Partners, Inc. Document (Paul O'Mara) on or about November 16, 2004.

23. Donnelly, Paul O'Mara and others present at the meeting on November 4, 2004 discussed the engagement of Neal O'Mara, who is the brother of Paul O'Mara, to perform certain specific programming on a "fee for service" basis as an "outside contractor." The parties agreed at the November 17, 2004 meeting to engage Neal O'Mara to perform the specified programming work as an outside contractor. In December, 2004, a specification for the VB.NET programming was forwarded to Neal O'Mara.

24. On or about November 26, 2004, Sebago Partners, by Donnelly, and Neal O'Mara executed a document entitled "Sebago Partners, Inc." (hereby referred to as the "Sebago Partners, Inc. Document (Neal O'Mara) ", a true and accurate copy of which is attached hereto as Exhibit 3. The document did not purport to set forth any agreement about an assignment of copyright interests.

25. The Sebago Partners, Inc. Document (Neal O'Mara) sets forth certain provisions which are stated to be "[i]n consideration for [Neal O'Mara's] engagement as an independent contractor by [Sebago Partners]."

26. In or about January, 2005, Donnelly, Sebago Partners, and UCHC entered into an agreement with Neal O'Mara pursuant to which Neal O'Mara agreed to perform certain programming defined in a "Specifications For Contractual Programming For Feasibility Phase Prototype" document and Sebago Partners would pay him $5,000 for such work upon completion of that deliverable.

27. As of January 26, 2005, Donnelly and Sebago Partners agreed to issue Neal O'Mara 2.5% of the voting stock of UCHC upon incorporation of such entity and an additional 10% of

6

such stock at a later time in consideration for certain work designing UCHC's web page and web presence, continuing the VB.NET programming and maintenance, and certain "security" work. It was further agreed that such equity was in addition to the $5,000 payable to him pursuant to the prior agreement.

28. On or about February 22, 2005, Donnelly and Neal O'Mara executed a document entitled "Confidentiality / Proprietary Information Agreement" (hereby referred to as the "Confidentiality / Proprietary Information Document (Neal O'Mara)", a true and accurate copy of which is attached hereto as Exhibit 4).

29. Paul O'Mara and Neal O'Mara designed, developed, created, and authored the works identified in the document attached hereto as Exhibit 5 (hereinafter referred to as the "Works"), which such works contained their original ideas, source code, and writing. Paul O'Mara worked approximately 1,500 hours and Neal O'Mara worked approximately 1,000 hours on such works.

30. As of March 1, 2005, the parties completed the feasibility phase through development of the website and demonstrated its successful operation. Donnelly acknowledged that the feasibility phase had been completed as of that date and distributed a vesting schedule regarding issuance of stock in the new entity.

31. Upon information and belief, Donnelly and Sebago Partners caused UCHC to be formed as a limited liability company on or about April 5, 2005. Donnelly stated at a meeting held on April 12, 2005 that Donnelly and corporate counsel would be distributing "all appropriate paperwork and Company papers" to each member of the LLC, specifically including Paul O'Mara, Neal O'Mara, and others.

32. Paul O'Mara and Neal O'Mara completed the final design components and caused such components to be made available to Donnelly on the morning of May 31, 2005.

7

' 33. Shortly after the final design components were made available to Donnelly,

Donnelly then sent an email to Paul O'Mara and Neal O'Mara at 10:38 a.m. on May 31, 2005

which attached various documents. Donnelly stated in his email that:

> Attached, please find the basis of our legal relationship. I expect to have the "Operating Agreement" by 3:00 PM today. At that point I will forward for your review.
>
> I ask you to remember that this is the 'Draft' and that I do not expect for you to have to sign these documents in Maine tomorrow. Instead our visit to Maine tomorrow will be for the benefit of meeting Jim and asking any questions that you think would help clarify any aspect of the relationship. After that and in concert with your own counsel you should have enough information to make your comments.
>
> Thank you for your patience and I look forward to your comments.

34. The attached documents included a memorandum (regarding "Membership

Interests") from Donnelly's, Sebago Partners', and UCHC's corporate counsel, Pierce Atwood

LLP of Portland, Maine, dated May 27, 2005, an offer letter, and a document entitled Non-

Disclosure, Non-Solicitation and Non-Competition Agreement.

35. Later that day, at 6:02 p.m., Donnelly forwarded an additional document to Paul

O'Mara and Neal O'Mara, entitled UCompareHealthcare, LLC Operating Agreement.

36. Contrary to the parties' agreement and the representations of Donnelly and Sebago

Partners, the memorandum and related documents provided by corporate counsel stated and/or

provided that:

> a. Rather than issuing voting stock in a corporation, membership units in a limited liability company would be issued.
>
> b. The membership units would be issued to Paul O'Mara and Neal O'Mara "in exchange for future services", while Donnelly would have an "existing interest" based on the development efforts to date.

8

c. Donnelly would be issued "Class A membership units", which would "carry certain preferences and rights different from other classes of membership units" – including distribution and liquidation preferences, certain "special voting rights", and the ability to designate the manager of UCHC;

d. Donnelly would be the sole Class A member;

e. The other individuals, including Paul O'Mara and Neal O'Mara, would be issued so called "profits" interests, designated as "Class B membership units," "in exchange for future services to the Company";

f. The Class B units would be subject to a four year vesting schedule;

g. The Class B units were subject to "forfeiture" if certain milestones were not met;

h. The Class B units were valued at zero as of the date of the grant and were "limited to future earnings and appreciation of the Company's value."

i. The Class B units would only be entitled to distributions after such interests had vested and after Donnelly had received a return of his so- called "contributed capital preference amount."

j. Distributions to Class A and B units would be made at the discretion of the manager of UCHC.

k. No member would be entitled to "a salary, draw or other cash distribution for six months from the date of issuance."

l. The Class B membership units would be granted only upon the commencement of full time service with UCHC, such grants to be subject to the vesting schedule.

9

m. The Class B membership units would be forfeited if the member's status as an "Active Member" was terminated for cause;

n. The units were subject to the right of the Company to repurchase the vested units "at fair market value as determined by the Management Committee if your status as an Active Member terminates for any reason other than termination for 'Cause.'"

o. All unvested units would expire and be forfeited to UCHC if the status as an Active Member were terminated "for any reason whatsoever."

p. The Class B units were subject to a "drag-along" right in favor of the Class A member, providing that the Class B member would be required to sell their interest in UCHC if the Class A member elected to sell his entire interest.

q. The Class B unit members would not be able to control the business and affairs of UCHC, would not be managers of UCHC, and would be subject to dilution of their interest.

r. The Class B unit members status as an "Active Member" was "at will," meaning that UCHC could terminate such status "at any time and for any reason, with or without cause."

s. The Class B unit members would be required to sign a Non-Disclosure, Non-Solicitation and Non-Competition Agreement, which provided for the assignment of copyright interests to UCHC.

37. Paul O'Mara and Neal O'Mara notified Donnelly on May 31, 2005 that the documents did not reflect the parties' agreements and were not acceptable. Donnelly stated that he agreed that the documents did not reflect the parties' agreements and needed to be corrected.

10

Donnelly further stated that he had requested that his counsel change the documents. Donnelly promised to forward the revised documents to the O'Maras as soon as he received them from counsel. Donnelly also confirmed that Paul O'Mara and Neal O'Mara were entitled to receive "vested" interests in UCHC. Donnelly further stated that he would pay Paul O'Mara and Neal O'Mara for their prior work if Donnelly and the O'Maras were unable to reach agreement regarding the documents that Donnelly had presented to the O'Maras earlier that day.

38.  On June 1, 2005, the O'Maras, by their counsel's e-mail to Donnelly, further notified Donnelly, Sebago, and UCHC that the proposed written agreements that had been provided to the O'Maras did not reflect the agreements of the parties and requested that Donnelly review the proposed written agreements and respond to such notification. The O'Maras further notified Donnelly, Sebago, and UCHC that "[a]ny unauthorized use of the materials created by the O'Maras would be a violation of their intellectual property rights."

39.  Donnelly, Sebago Partners, and UCHC have failed and refused to compensate the O'Maras for the services performed by the O'Maras or to engage in any discussion about the issues and concerns addressed in the O'Maras' counsel's June 1 correspondence.

40.  Paul O'Mara has not at any time received any compensation, equity, or consideration for any of the work he performed in connection with UCHC, specifically including all of the Works.

41.  With the limited exception of $5,000 that he received in connection with certain specific programming performed on a fee for service basis, Neal O'Mara has not at any time received any compensation, equity, or consideration for any of the work he performed in connection with UCHC - specifically including all of the Works.

11

·    42. By letter dated June 9, 2005, UCHC, by its counsel, asserted that UCHC was the successor entity to Sebago Partners and that the issuance of equity in UCHC was "contingent on meeting both individual and group objectives, and subject to Mark Donnelly's overall concurrence." By its counsel, UCHC further stated that "UCHC considers the relationship between the O'Maras and UCHC terminated effective as of June 1, 2005."

43. UCHC, by its counsel's letter dated June 9, 2005, further asserted that the O'Maras had assigned to UCHC "all their rights to any of their work on the project or on behalf of UCHC" and that such work was the property of UCHC.

44. By letter dated June 22, 2005 from their counsel, the O'Maras again advised and notified Donnelly, Sebago Partners, and UCHC that the O'Maras are owners of all works created by them during their association with Sebago Partners and UCHC as identified on the Exhibit A attached to that letter. The O'Maras, by their counsel's letter, demanded that UCHC cease and desist from all uses of the Works, return all Works to the O'Maras immediately, and destroy any and all copies in its possession. The O'Maras further demanded compensation, issuance of the stock as promised and agreed upon, and that UCHC provide an accounting and distribution of profits owed upon commercialization of any property that is jointly owned by UCHC and the O'Maras.

45. By letter dated July 5, 2005, UCHC, by its counsel, asserted that its purported predecessor entity, Sebago Partners, is the sole and exclusive owner of the Works.

## Count I
## (Declaratory Judgment)

46. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 45 of the Complaint as if fully set forth herein.

12

· 47. The Works contain a large amount of material wholly original with Paul O'Mara and Neal O'Mara and are copyrightable subject matter under the laws of the United States.

48. At all times herein relevant, Plaintiffs complied in all respects with the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

49. Each of the Works is an original work, copyrightable under the Copyright Act.

50. Plaintiffs were not at any time employees of any of the Defendants.

51. The parties did not enter into any agreement that classifies Plaintiffs' relationship with Defendants as that of work-made-for-hire under the United States Copyright Act.

52. Plaintiffs have not authorized Defendants to copy, reproduce, manufacture, disseminate, or distribute the Works.

53. The O'Maras have taken all necessary measures to protect and maintain the value of their Works and they have filed registration applications and fees for the exclusive rights and privileges in and to the copyrights in the Works under the Copyright Act, 17 U.S.C. §§ 101, *et seq*. The O'Mara's have received the following Certificates of Registration: TXu1-244-572, TXu1-223-149, TXu1-223-148, TXu1-223-146, TXu1-223-147, TXu1-223-150, TXu1-223-296, and TXu1-244-125. Additional registrations are currently pending.

54. There exists an actual controversy and a conflict of asserted rights between the parties with respect to the copyrights in the Works and with respect to the Confidentiality / Proprietary Information Agreement Document (Paul O'Mara), the Sebago Partners, Inc. Document (Paul O'Mara), the Sebago Partners, Inc. Document (Neal O'Mara), the Confidentiality / Proprietary Information Agreement Document (Neal O'Mara) and the parties' agreements regarding the issuance of equity in UCHC, as more fully set forth above.

55. Plaintiffs are interested parties in accordance with, and seek a declaration of their rights pursuant to, 28 U.S.C. § 2201.

56. Plaintiffs request that the Court enter declarations with respect to the parties' rights, including but not limited to declarations that Plaintiffs are the exclusive owners of the copyright in such of the Works in which Plaintiffs are the sole proprietors of rights, title and interest, that Plaintiffs are the joint owners of the copyright in such of the Works in which Plaintiffs are the joint proprietors of rights, title and interest, that Plaintiffs did not purport to assign any copyrights to Defendants, that such documents or purported agreements by which Defendants claim any rights against Plaintiffs, including any interest in the Works, are void and unenforceable for reasons including, but not limited to, fraud, the lack of contemplated consideration, that Defendants repudiated their agreements with Plaintiffs, and that such documents are deemed rescinded.

## COUNT II
### (Breach of Contract)

57. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 56 of the Complaint as if fully set forth herein.

58. Defendants, by their conduct set forth above, breached their contractual duties and obligations to Plaintiffs, including but not limited to the failure to issue equity in accordance with the parties' agreement, the failure to compensate Plaintiffs, and the repudiation of the parties' agreements.

59. Plaintiffs fully complied with their contractual obligations.

60. Plaintiffs have been damaged by Defendants' breaches of contract.

14

## COUNT III
### (Breach of the Covenant of Good Faith and Fair Dealing)

61. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 60 of the Complaint as if fully set forth herein.

62. Defendants owed the duty of utmost good faith and fair dealing to Plaintiffs.

63. Defendants, by their conduct set forth above, breached their duties of good faith and fair dealing to Plaintiffs.

64. Plaintiffs have been damaged by Defendants' breaches of the duty of good faith and fair dealing.

## COUNT IV
### (Quantum Meruit)

65. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 64 of the Complaint as if fully set forth herein.

66. Defendants requested and directed Plaintiffs to render services to and for the benefit of Defendants.

67. In response to those requests, Plaintiffs performed services for the benefit of Defendants for which Plaintiffs have not been paid.

68. Defendants owe Plaintiffs for the fair and reasonable value of the services rendered by Plaintiffs to Defendants for which Defendants have not made payment.

## COUNT V
### (Fraud)

69. Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 68 of the Complaint as if fully set forth herein.

15

·    70.    Defendants made false statements of material fact to Paul O'Mara and Neal O'Mara, specifically including the false statements set forth in paragraphs 10, 13, 14, 18, 21, 27, and 37 above.

71.    Defendants knew, or should have known, that the statements were false.

72.    Defendants made the false statements with the intention that Paul O'Mara and Neal O'Mara would rely upon such statements and render services for the benefit of Defendants and execute the documents identified in paragraphs 12, 19, 24, and 28 above.

73.    Paul O'Mara and Neal O'Mara reasonably relied upon Defendants' statements.

74.    Paul O'Mara and Neal O'Mara were damaged as a result of Defendants' fraudulent conduct.

WHEREFORE, Plaintiffs Paul O'Mara and Neal O'Mara respectfully request that the Court enter the following relief:

1.  Enter judgment in favor of Plaintiffs and against Defendants on each and every Count of the Complaint and award Plaintiffs damages, interest, costs, and attorney's fees.

2.  Enter declarations that Plaintiffs are the exclusive owners of the copyright in such of the Works in which Plaintiffs are the sole proprietors of rights, title and interest, that Plaintiffs are the joint owners of the copyright in such of the Works in which Plaintiffs are the joint proprietors of rights, title and interest, that Plaintiffs did not purport to assign any copyrights to Defendants, and that such documents or purported agreements by which Defendants claim any rights against Plaintiffs, including any interest in the Works, are void and unenforceable.

3.  After hearing and notice, enter an Order preliminarily and permanently restraining and enjoining Defendants and their officers, agents, servants, employees, and attorneys, and all others acting in active concert with them , from copying, reproducing, manufacturing, duplicating, disseminating, distributing, and using the Works.

4.  Such other and further relief as the Court deems just and proper.

### Jury Demand

The Plaintiffs hereby demand a trial by jury on all issues so triable.

PLAINTIFFS
PAUL O'MARA AND NEAL O'MARA
By their Attorneys,

Dale C. Kerester, Esq.
LYNCH, BREWER, HOFFMAN & FINK, LLP
101 Federal Street, 22nd Floor
Boston, MA 02110-1800
(617) 951-0800
dkerester@lynchbrewer.com

William O'Brien (DK x sur.)
William E. O'Brien, Esq.
Law Office of William E. O'Brien, Esq.
363 Bailey Road
Holden, MA 01520
(508) 829-5185
william@masstechlawyer.com

Dated:       September 7, 2005

17

## CONFIDENTIALITY / PROPRIETARY INFORMATION AGREEMENT

This agreement is made as of the 16th day of September, 2004, by and between SEBAGO Partners herein ("SPI"), a Maine Corporation, having its principal place of business at 25 Burke Road Extension, Standish, Maine 04084.

WHEREAS Paul O'Mara is being considered by "SPI" as a possible independent contractor, or consultant, in connection with "SPI" internet, marketing, and businesses, and WHEREAS Paul O'Mara may become exposed to information which "SPI" considers confidential, NOW THEREFORE, in consideration of the disclosure of such information, the premises and the mutual covenants contained herein and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. As used herein, "Proprietary Information" shall mean any secret, or private, or confidential information of "SPI" concerning the itellectuall property, design, manufacture, marketing methods, customers lists, use, purchase or sale of its products, services or materials such as may be contained in but not limited to "SPI"'s business methods, processes, techniques, research, development, marketing plans, mailing lists, customer lists, and proposals, all to the extent that (i) such information is not readily disclosed by inspection of "SPI"'s products and (ii) such

1

party has expressly or impliedly protected such information from unrestricted use by others. Proprietary information shall include information regarding business plans.

2. Paul O'Mara shall not disclose to any third party any Proprietary Information of "SPI"'s for a period of three years from the latter of the date of this Agreement or the date on which such Proprietary Information is disclosed for any purpose other than evaluation of its interest in entering into a business arrangement with "SPI".

3. NOTWITHSTANDING the foregoing, Paul O'Mara shall not be required to maintain in confidence:

   a. information which is or has subsequently become public knowledge without fault of the receiving party for whom such information had been disclosed by the other party hereto:

   b. information of "SPI"'s which is known to Paul O'Mara at the time of disclosure as evidenced by prior written records and which is not subject to an obligation of confidence imposed in another agreement or relationship; or

   c. information which is lawfully obtained from a third party entitled to disclose it.

4. "SPI" and Paul O'Mara represent, each to the other, that each has a policy and procedure designed to protect trade secrets or other rights in its own Proprietary Information, including notices to and agreements with employees and agents to prevent unauthorized disclosure or use of such Proprietary Information. Any and all Proprietary Information disclosed hereunder shall be subject to such policies and procedures.

2

SEBAGO Partners

Date: _9/16/04_     By _[signature]_

Its _PRESIDENT_

Paul O'Mara

Marlbourough, MA 01520

Date: _9/16/04_
By _[signature]_

3

# Sebago Partners, Inc.

**CONFIDENTIAL INFORMATION** means information disclosed to me or known by
me as a result of my relationship with SP, not generally known in the trade or industry in
which SP is engaged, about SP's business operations, customers, suppliers, products,
processes, **EMPLOYEE/CONTRACTOR CONFIDENTIALITY AGREEMENT**

Paul O'Mara
(Name)

31 Boudreau Ave.    Marlborough    MA    01752

(Residence Address)    (City)    (State)    (Zip)

Terms used in this agreement:

**SP** means Sebago Partners, Inc., its successors or assigns.

**INVENTIONS** means any discoveries, improvements, programs or program architecture
and ideas, whether patentable or not.

I AM CURRENTLY ENGAGED AS AN INDEPENDENT CONTRACTOR OR
DESIRE TO BE ENGAGED AS AN INDPPENDENT CONTRACTOR BY SP IN A
CAPACITY IN WHICH I MAY RECEIVE OR CONTRIBUTE TO CONFIDENTIAL
INFORMATION.

In consideration by my engagement as an independent contractor by SP:

1.  Unless I first secure SP's written consent (which consent may be unreasonably
    withheld), I will not disclose, use, disseminate, lecture upon, or publish
    CONFIDENTIAL INFORMATION of which I become informed during my
    engagement as an independent contractor or otherwise, whether or not developed
    by me, provided that I may disclose same for the sole purpose of carrying out my
    work assignments at SP.

2.  I shall not disclose to SP or induce SP to use any secret or confidential
    information or material belonging to others, including my former employers, if
    any.

3.  I agree to disclose promptly to SP all INVENTIONS that are related to the actual
    or anticipated activities of SP conceived or made by me whether or not during the
    course of my rendering services on behalf of SP or with the use of SP's facilities,
    materials, or personnel, either solely or jointly with another or others at any time
    during my engagement as an independent contractor or otherwise by SP. Related
    to the actual or anticipated business or activities of SP, or related to its actual or



anticipated research and development or suggested by or resulting from any task assigned to me or work performed by me for, or on behalf of SP, I assign and agree to assign my entire right, title, and interest therein to SP.

4. I shall, whenever requested to do so by SP, execute any applications, assignments, or other instruments which SP shall consider necessary, to apply for and obtain letters of patent, trademarks, service marks, or the like in the United States, or any foreign country, or to protect otherwise SP's interests. These obligations shall continue beyond the termination of my engagement with SP with respect to INVENTIONS conceived or made by me during my period of relationship, and shall be binding upon my executors, administrators, or other legal representatives.

5. I will not assert any rights under any inventions as having been made or acquired by me prior to my being employed by SP unless such INVENTIONS are identified on a sheet attached hereto and signed by me as of the date of this agreement.

6. Upon termination or the conclusion of my relationship with SP for any reason, I shall turn over to a designated individual at SP all property then in my possession or custody and belonging to SP. I shall not retain any copies or reproductions of computer discs, correspondence, memoranda, notes, reports, notebooks, drawings, photographs, or other documents relating in any way to the affairs of SP or which are entrusted to me at any time during my relationship with SP.

7. I hereby represent that I am not subject to any confidentiality or non-competition agreement or any other similar type of restriction that would affect my ability to devote my attention and carry out my duties, responsibilities or relationship with SP.

8. I ACKNOWLEDGE HAVING READ, EXECUTED, AND RECEIVED A COPY OF THIS AGREEMENT, and agree that with respect to the subject matter hereof it is my entire agreement with SP superseding any previous oral or written communications, representations, understandings, or agreements with SP or any of its officials or representatives.

9. This agreement shall be interpreted and enforced in accordance with the laws of The Commonwealth of Massachusetts.

IN WITNESS WHEREOF, I have hereunto affixed my hand and seal, this __16th__ day of __November__, 2004.

By: _____

Name: __Paul O'Mara__

Sebago Partners, Inc.

By: _____

# Sebago Partners, Inc.

**CONFIDENTIAL INFORMATION** means information disclosed to me or known by me as a result of my relationship with SP, not generally known in the trade or industry in which SP is engaged, about SP's business operations, customers, suppliers, products, processes, **EMPLOYEE/CONTRACTOR CONFIDENTIALITY AGREEMENT**

*NEAL O'Mara*
(Name)

*UNIT C1554, 701 Moore Ave Lewisburg PA    17837*
(Residence Address)    (City)    (State)    (Zip)

Terms used in this agreement:

**SP** means Sebago Partners, Inc., its successors or assigns.

**INVENTIONS** means any discoveries, improvements, programs or program architecture and ideas, whether patentable or not.

I AM CURRENTLY ENGAGED AS AN INDEPENDENT CONTRACTOR OR DESIRE TO BE ENGAGED AS AN INDPEPENDENT CONTRACTOR BY SP IN A CAPACITY IN WHICH I MAY RECEIVE OR CONTRIBUTE TO CONFIDENTIAL INFORMATION.

In consideration by my engagement as an independent contractor by SP:

1.  Unless I first secure SP's written consent (which consent may be unreasonably withheld), I will not disclose, use, disseminate, lecture upon, or publish CONFIDENTIAL INFORMATION of which I become informed during my engagement as an independent contractor or otherwise, whether or not developed by me, provided that I may disclose same for the sole purpose of carrying out my work assignments at SP.

2.  I shall not disclose to SP or induce SP to use any secret or confidential information or material belonging to others, including my former employers, if any.

3.  I agree to disclose promptly to SP all INVENTIONS that are related to the actual or anticipated activities of SP conceived or made by me whether or not during the course of my rendering services on behalf of SP or with the use of SP's facilities, materials, or personnel, either solely or jointly with another or others at any time during my engagement as an independent contractor or otherwise by SP. Related to the actual or anticipated business or activities of SP, or related to its actual or



anticipated research and development or suggested by or resulting from any task assigned to me or work performed by me for, or on behalf of SP, I assign and agree to assign my entire right, title, and interest therein to SP.

4.    I shall, whenever requested to do so by SP, execute any applications, assignments, or other instruments which SP shall consider necessary, to apply for and obtain letters of patent, trademarks, service marks, or the like in the United States, or any foreign country, or to protect otherwise SP's interests. These obligations shall continue beyond the termination of my engagement with SP with respect to INVENTIONS conceived or made by me during my period of relationship, and shall be binding upon my executors, administrators, or other legal representatives.

5.    I will not assert any rights under any inventions as having been made or acquired by me prior to my being employed by SP unless such INVENTIONS are identified on a sheet attached hereto and signed by me as of the date of this agreement.

6.    Upon termination or the conclusion of my relationship with SP for any reason, I shall turn over to a designated individual at SP all property then in my possession or custody and belonging to SP. I shall not retain any copies or reproductions of computer discs, correspondence, memoranda, notes, reports, notebooks, drawings, photographs, or other documents relating in any way to the affairs of SP or which are entrusted to me at any time during my relationship with SP.

7.    I hereby represent that I am not subject to any confidentiality or non-competition agreement or any other similar type of restriction that would affect my ability to devote my attention and carry out my duties, responsibilities or relationship with SP.

8.    I ACKNOWLEDGE HAVING READ, EXECUTED, AND RECEIVED A COPY OF THIS AGREEMENT, and agree that with respect to the subject matter hereof it is my entire agreement with SP superseding any previous oral or written communications, representations, understandings, or agreements with SP or any of its officials or representatives.

9.    This agreement shall be interpreted and enforced in accordance with the laws of The Commonwealth of Massachusetts.

IN WITNESS WHEREOF, I have hereunto affixed my hand and seal, this _2 6_ day of _November_, 200_4_.

By:_____    Sebago Partners, Inc.

Name: _Neal O'Mara_    By:_____

## CONFIDENTIALITY / PROPRIETARY INFORMATION AGREEMENT

This agreement is made as of the _22_ day of _February_ , 2005, by and between

SEBAGO Partners herein ("SPI"), a Maine Corporation, having its principal place of business at 25

Burke Road Extension, Standish, Maine 04084 and _MR. NEAL O'MARA_ of

_Albuquerque, NM 07111_ ("Third

Party").

WHEREAS Third Party is being considered by SPI as a possible independent contractor, or

consultant, in connection with SPI's healthcare related internet, marketing project and related

possible businesses (the "Business"); and

WHEREAS Third Party may become exposed to information which SPI considers confidential

relating to the Business.

NOW THEREFORE, in consideration of the disclosure of such information, the promises and the

mutual covenants contained herein and for other good and valuable consideration the receipt and

sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. As used herein, "Proprietary Information" shall mean any secret, or private, or confidential

   information of SPI concerning the intellectual property, design, manufacture, marketing

   methods, customers lists, use, purchase or sale of its products, services or materials such as may

   be contained in but not limited to SPI's business methods, processes, techniques, research,

1



development, marketing plans, mailing lists, customer lists, and proposals, all to the extent that (i) such information is not readily disclosed by inspection of SPI's products or materials and (ii) such party has expressly or impliedly protected such information from unrestricted use by others. Proprietary Information shall include information regarding business plans.

2.  Third Party shall not disclose to any third party any Proprietary Information of SPI's for a period of three years from the latter of the date of this Agreement or the date on which such Proprietary Information is disclosed for any purpose other than evaluation of its interest in entering into a business arrangement with SPI.

3.  NOTWITHSTANDING the foregoing, Third Party shall not be required to maintain in confidence:

    a.  information which is or has subsequently become public knowledge without fault of the receiving party for whom such information had been disclosed by the other party hereto:

    b.  information of SPI's which is known to Third Party at the time of disclosure as evidenced by prior written records and which is not subject to an obligation of confidence imposed in another agreement or relationship; or

    c.  information which is lawfully obtained from a third party entitled to disclose it.

4.  SPI and Third Party represent, each to the other, that each has a policy and procedure designed to protect trade secrets or other rights in its own Proprietary Information, including notices to and agreements with employees and agents to prevent unauthorized disclosure or use of such Proprietary Information. Any and all Proprietary Information disclosed hereunder shall be

2

subject to such policies and procedures.

Date: 2/23/05

SEBAGO Partners

By _____
Its: President

Third Party: By: _____
Address: 12331 Papaya Ct. NE Albuquerque, NM 87111

Date: 2/23/05
By Neal O'Mara

3

List of Copyrights Owned by Paul and Neal O'Mara

- Laundry Management Database (LMDB.mdb)
- Look and Feel of Laundry Management Suite (screenshots: NewCollectionScreen.jpg, NewVendPriceScreen.jpg, VendMultiSelect.bmp)
- Proposed Technical Approach (Laundry Management Software.doc)
- Descriptions of Laundry Management Components (Modules) (LMComponents.doc)
- Database Structure (LMDBTables.doc)
- Laundry Management Flowchart (LMFlow.jpg)
- Add Customer Module
- Add Utility Module
- Add Vendor Module
- Collection Module
- Employee Maintenance Module
- Gas Dryer Efficiency Module
- Graphics (excluding Supawash Trademarked Logo)
- Icons (excluding Supawash Trademarked Logo)
- Installation Kits
- Administrative Module
- Application Main Module
- Machine Maintenance Module
- Vend Price Management Module
- Reporting Components (including module and reports)
- Water Meter Reader Module
- ContentManagementSpecV0-1.doc
- Logic for User Accounts Component.doc
- Revised User Accounts Business LogicV2.doc
- UserAccountsFeb21.jpg
- AccountActivationForCorporateModule.doc
- LogicUserAcctsV1_Draft1.doc
- Revised User Accounts Business Logic.doc
- HardwareRFPV1_Draft1.doc
- HardwareRFPV2.doc
- NetworkDiagram1.jpg
- NetworkDiagram2.jpg
- Draft0.doc
- InfrastructureRFPUpdate.doc
- UCHC_RFPV1.doc

- UCHC_RFPV1-1.doc
- Proposed Expedited Hardware Strategy.doc
- MockProposal.doc
- HardwareRFP_12-5-04.doc
- HardwareRFPV1_Draft2.doc
- HardwareRFPV1_Draft2b.doc
- HardwareRFPV1_Draft3.doc
- HardwareRFPV1_Draft3b.doc
- HardwareRFPV1_Draft4.doc

**"Specification for Information Technology Architecture: Feasibility Phase"**

- Draft1-0.doc
- Draft1-1.doc
- Draft1-2.doc
- Draft1-3.doc
- Draft1-4.doc
- Draft1-5.doc
- Draft1-6.doc
- Draft1-7.doc
- Draft1-8.doc
- Draft1-9.doc
- Draft1.doc
- Draft2-0.doc
- Draft2-1.doc
- Draft2-2.doc
- Draft2-3.doc
- Draft2-4.doc
- Draft3-0.doc
- Draft3-1.doc
- Draft3-2.doc
- Draft3-3.doc
- Draft3-4.doc
- Draft3-5.doc
- Draft3-6.doc
- Draft3-7.doc
- Draft3-8.doc
- Draft3-9.doc
- Draft4-0.doc
- Draft4-1.doc
- Draft4-2.doc
- Draft4-3.doc

- Draft4-4.doc
- Draft4-5.doc
- Draft4-6.doc
- FeasibilityPhaseUpdateDraft1-0.doc
- FeasibilityPhaseUpdateDraft1-1.doc
- FeasibilityPhaseUpdateDraft1-2.doc
- FeasibilityPhaseUpdateDraft1-3.doc
- FeasibilityPhaseUpdateDraft1-4.doc
- FeasibilityPhaseUpdateDraft1-5.doc
- FeasibilityPhaseUpdateDraft1-6.doc
- FeasibilityPhaseUpdateDraft1-7.doc
- FeasibilityPhaseUpdateDraft1-8.doc
- FeasibilityPhaseUpdateDraft1-9.doc
- FeasibilityPhaseUpdateDraft2-0.doc
- FeasibilityPhaseUpdateDraft2-1.doc

**4/30/05**

- About Us.doc
- Contact Us.doc
- Employers.doc
- Forgot Password.doc
- Hospitals.doc
- Individuals.doc
- Welcome Page.doc

**1/14/05-1/15/05**

- About Us.doc
- MainPageContent.doc

**Flowcharts/Diagrams**

- CompareDoctorsV1.jpg
- CompareDoctorsV2.jpg
- CompareFacilitiesV1.jpg
- CompareFacilitiesV2.jpg
- WebsiteMapV2.jpg
- WebsiteStructureV0c.jpg
- WelcomePageV1.jpg
- WelcomePageV2.jpg

**"Specification For Contractual Programming"**

- Required Programs for Feasibility Phase.doc
- SpecForContractProgrammingV1.doc
- SpecForContractProgrammingV2.doc
- SpecForContractProgrammingV2b.doc

- SpecForContractProgrammingV4.doc (co-authored with Brian Richardson)
- SpecForContractProgrammingV4_PaulComments.doc (co-authored with Brian Richardson)
- SpecForContractProgrammingV5.doc (co-authored with Brian Richardson)
- SpecForContractProgrammingV6.doc (co-authored with Brian Richardson)

**"From Text File to Advanced Metrics: Building the Backend"**

- BuildingTheBackendDraft1-0.doc
- BuildingTheBackendDraft1-1.doc
- BuildingTheBackendDraft1-2.doc
- BuildingTheBackendDraft1-3.doc
- BuildingTheBackendDraft1-4.doc
- BuildingTheBackendDraft1-5.doc
- BuildingTheBackendDraft1-6.doc
- BuildingTheBackendDraft1-7.doc
- xBuildingTheBackendDraft.doc

**"Functional Specification"**

- FuncSpecOutlineV1_BU.doc
- FuncSpecOutlineV1_bu2.doc
- FuncSpecOutlineV1.doc
- FuncSpecOutlineV2b.doc (co-authored with Mark Donnelly)
- FuncSpecOutlineV3.doc (co-authored with Mark Donnelly)
- FuncSpecOutlineV3b.doc (co-authored with Mark Donnelly)
- FuncSpecOutlineV3c.doc (co-authored with Mark Donnelly)
- FuncSpecOutlineV4.doc (co-authored with Mark Donnelly)
- FuncSpecDiscussionDraftV1.doc (co-authored with Mark Donnelly)
- FuncSpecDiscussionDraftV1-1.doc (co-authored with Mark Donnelly)
- FuncSpecDiscussionDraftV1-2.doc (co-authored with Mark Donnelly)
- FuncSpecDiscussionDraftV1-3.doc (co-authored with Mark Donnelly)
- FuncSpecDiscussionDraftV1-4.doc (co-authored with Mark Donnelly)
- FuncSpecDiscussionDraftV1-5.doc (co-authored with Mark Donnelly)
- FuncSpecDiscussionDraftV1-6.doc (co-authored with Mark Donnelly)
- FuncSpecDiscussionDraftV1-7.doc (co-authored with Mark Donnelly)
- FuncSpecDraft4-11-05.doc (co-authored with Mark Donnelly)
- FuncSpecDraftP1.doc (co-authored with Mark Donnelly)
- FuncSpecDraftP2.doc (co-authored with Mark Donnelly)
- FuncSpecLessCharts.doc (co-authored with Mark Donnelly)
- AdvancedMetricsDBObjectFlow.doc
- Database-Specific Flow Charts (appDataImport_Draft3_12-27-04.jpg, appDataImport_Draft3_12-27-04_P2.jpg, BackendDraft1P1_V1.tif, BackendDraft1P2_V1.tif)
- Database Design Specs.doc
- UCHC2_Data.MDF

- 6-1-05DBScript.sql
- UCHCDatabaseScripts.doc
- DTS Jobs
- SQL Database Object Naming Conventions.doc
- Stored Procedures
  _Dev_AnswerCAHPS
  _Dev_CAHPS_AddNewSurvey
  _Dev_CAHPS_UserStartSurvey
  _Dev_CAHPSClearQuestionsToTheRight
  _ErrorTrapExample
  _ErrorTrapExample2
  _LatLongGuessNTest
  arn_NewUserLogin
  ApproxDistanceCalc
  ApproxDistanceCalc2
  ApproxDistanceCalc3
  ApproxDistanceCalc4
  ApproxDistanceCalc5
  ApproxDistanceCalc6
  ApproxDistanceCalc7
  ApproxDistanceCalc8
  ApproxDistanceCalc9
  BuildAMT7
  BuildDBObjectsList
  BuildFeas_HCUPAdvancedMetrics
  BuildFEAS_TestRptPOS
  BuildHCUPHCUPHCUP
  BuildHCUPHCUPHCUP2
  BuildPaulRules
  BuildProdNH
  BuildProdNHStaff
  BuildprodNHStaffAvgsAllStates
  BuildprodNHStaffAvgsByState
  BuildrefHCUPPayer_XCd
  BuildReflcd9DrgCd
  BuildReflcd9MdcCd
  BuildRefMarksPosHcupXWalk
  BuildRefPOSXWalkHCUP
  buildRptNHDetail
  BuildrptPhysician_MA
  BuildrptPhysician_MA2

BuildStgNH
BuildTablesUsedBySProcs
CheckBoxesForFeas_HospReport
CheckBoxesForFeas_PhysicianReport
CheckBoxesForFeasNH_NHReport
CheckBoxGroupsForFeas_HospReport
CheckBoxGroupsForFeas_PhysicianReport
CheckBoxGroupsForFeasNH_NHReport
CheckForNewMassMedBoardFile
CheckForPopStgMassMed
CheckForValidateMassMed
CheckForVerifyMassMed
CheckRecentReports
CheckUserAccess
CheckUserAccountType
CheckUserForCorp
CheckUserIsActive
CheckUserReportsRun
CrazyDonkeys
CrazyDonkeys2
CrazyDonkeys3
CreatePOSMassTable
CreateProdHCUP_MA
CreateProdHCUPCoreMA
CreateRptNH
DamnDOnkey
DamnDOnkeysGoneWild
DamnDOnkeysGoneWild_WOrks_4
DamnDOnkeysGoneWild2
DamnDOnkeysGoneWild3
DamnDOnkeysGoneWild4
Dev_GetPhysicianList
DoctorReport
DonkeysForChristmas
DonkeyTest2
DoNothing
DRReport
feas_CAHPSDone
feas_CAHPSGetResults
feas_CAHPSSubmitResults
Feas_CheckForNewMA_HCUP_CoreFile

Feas_CheckForNewMassMedBoardFile
Feas_CheckForNewNHFile
Feas_CheckForNewPOSFile
Feas_CheckForPopProdHCUPCoreMA
Feas_CheckForPopRptAdvMetHCUPCoreMA
Feas_CheckForPopStgHCUPCoreMA
Feas_GetHospList
Feas_GetHospList_BACKUP
Feas_GetHospList2
Feas_GetPhysicianList
Feas_GetPhysicianList_Backup
Feas_GetPhysicianList2
Feas_GetPhysicianSpecialtyList
feas_HospReport
feas_HospReport_BACKUP
feas_HospReport2
feas_HospSavedReport
feas_PhysicianReport
feas_PhysicianSavedReport
Feas_PopulateProdHCUPCoreMA
Feas_PopulateRptAdvMetHCUPCoreMA
Feas_PopulateStgHcupCore_MA
Feas_PopulatestgPOS
feasNH_GetNHList
feasNH_GetNHList_Backup
feasNH_GetNHList2
feasNH_NHDeficienciesReport
feasNH_NHReport
feasNH_NHSavedReport
FindCorpUser
FindUser
FindUserByEmail
FIX_rptNHDateOfLastInspection
FIX_rptNHDateOfLastInspection2
GetCorpEmployeeAccounts
GetCorpStatement
GetHospList
GetHospList_New
GetHospList_Original
GetHrrNum
GetMDList

GetMDListBackup
GetNHList
GetPTCAVolume
HospReport
HospReport_Original
ImGOingDonkeyCrazy
ImportNewData
LogErrors
LogLogin
LogStoredProcedure
LoopyLoop2
MassMedBoardDTSImportComplete
MDReport
MoreDonkeydom
NHGroupNames
Populate_idMMBPhysicianID
PopulateFiveMileCol100Thru999
PopulateFiveMileCol10Thru99
PopulateidMmbPhysId
PopulatePOSMass
PopulatePOSMaster
PopulaterefHcupAhaICoreID
PopulateRefPhysicianHospAssoc
PopulaterptHosp
PopulateRptMassMedBoard
PopulaterptPhysician_MA
PopulateStgMassMedBoard
PopulateStgUPIN
PopulateZipLatLongFromZCTA
POSConversion
RecentReports
RecentReports1000
RegisterCorp
RegisterUser
SelectCommand
SetCorpStatement
SetNewPW
ShrinkDBXXX
SpaceUsedXXX
TestDynamicColumnNaming
TestFeas_PhysicianReport

TestHospReport
TestRegisterUser
UniqueMassMedBoardPhysicians
UpdateidMassMedBoardPhysicianID
UpdateRptMassMedBoardPhysicianID
UpdateRptNHDateOfLastInspection
UpdateRptNHPhoneNumber
UpdateRptPhysician_MA2
UpdaterptPhysician_MAPhysicianID
ValidateMassMedBoard
VerifyMassMedBoard

- Tables
  _Dev_CAHPS_AnswerID
  _Dev_CAHPS_QuestionID
  _Dev_CAHPSSurveyID
  _Dev_CAHPSSurveys
  _DevIssues
  _Hospitals
  _HospPOS
  _NewMasterHosp
  _TestHospTake1
  _TestHospTake2
  AdvancedMetricsTest1
  AdvancedMetricsTest3
  AMT7
  appCorpID
  appCorpSubscription
  appCorpSubscriptionTrans
  appCorpSubscriptionTransUsers
  appDataImport
  appIdImport
  appSubscription
  appSubscriptionTrans
  appUserAccount
  appUserID
  appUserLoginTrans
  'CM4_20~1#DBF$'
  Conditions1
  Database
  dbo_vwHQI_FTNT
  dbo_vwHQI_HOSP

dbo_vwHQI_HOSP_MSR_XWLK
dbo_vwHQI_PCTL_MSR_XWLK
dbo_vwNHC_CMPLNT_DFCNCY
dbo_vwNHC_GEOGRPHY
dbo_vwNHC_MSR
dbo_vwNHC_NH
dbo_vwNHC_SRVY_DFCNCY
dbo_vwNHC_SRVY_DT
dbo_vwNHC_STF
DBObjectsList
dmCBSA
dmCBSAProvider
dmOldMSA
dmPhysiciansWithSanctionsOct04
dmProvider
dmSupplier
DRG_Cases1
DRGFreq
dtproperties
ErrorMessages
Feas_HCUPAdvancedMetrics
FEAS_TestRptPOS
FiveMileRadius
HCUPReportExperiment
Hosp1_FieldDesc
HospData1
hstReports
hstStoredProceduresRun
ICD9DiagnosticCode
ICD9DRG
ICD9MDC
ICD9ProcedureCode
idCorp
idMassMedBoardPhysicianID
idUser
LEIE1002
MA_HCUP
MA_SID_2002_AHAL
MA_SID_2002_CORE
MassMedBoard
md_rev

MedProcedures
memCorpSubscription
memUserSubscription
NewMSACodes
OCT04
Opl540904
OSCAR1
PaulRules
POSDataTable$
POSDataTable$Print_Area
POSMass
POSMaster
POSMasterMassachusetts
POSNewMexico
POSTestWithExcel
prodHCUPCore_MA
prodMassMedBoard
ProdNH
prodNHStaff
prodNHStaffAvgsAllStates
prodNHStaffAvgsByState
prodPOS
prodPOSMaster
profAccounts
ProvCasesCMI
rawHCUP_Core_MA
rawPOS
RawZipCodes03
refAHAID
refCAHPSTest
refHcupAcuteStrokeDiag
refHCUPAdrgRiskMortalityCd
refHcupAdrgSevCd
refHcupAhalCoreID
refHCUPAMIDiag
refHCUPASource_XCd
refHCUPAsourceCd
refHCUPASourceUb92Cd
refHCUPATypeCd
refHcupChfDiag
refHCUPDisp_XCd

refHCUPDispCd
refHCUPDispUb92Cd
refHCUPDispUniformCd
refHcupGasHemDiag
refHCUPHipDiag
refHcupHipFractDiag
refHCUPHospID
refHCUPNeoMatCd
refHCUPPay_XCd
refHCUPPayCd
refHCUPPayerCd
refHCUPPedHeartSurg_1P
refHCUPPedHeartSurg_2D
refHCUPPedHeartSurg_2P
refHCUPPedHeartSurg_6P
refHCUPPl_CbsaCd
refHCUPPl_Ruca4Cd
refHcupPneumDiag
refHCUPRaceCd
refHcupXPos
refHospFieldDescFind
refHospFieldDescReport
refHospFieldGroups
refHospID_ProviderID
refHospID_ProviderID_Changed
refICD9DRGCd
refIcd9MdcCd
refLoadStatusCodeDesc
refMarksPosHcupXWalk
refMmbProviderID
refNHFieldDesc
refNHFieldGroups
refPhysicianFieldDescFind
refPhysicianFieldDescReport
refPhysicianFieldGroups
refPhysicianHospAssoc
refPhysicianParams
refPhysicianSpecialty
refPOSAccred_Stat
refPOSCategoryID
refPOSCategorySubtypeID

refPOSInter_Carrier
refPOSMed_Schl_Aff
refPOSNon_Participating_Type
refPOSProgPartci
refPOSRecord_Type
refPOSRegionID
refPOSSRV
refPOSSwingbed_Size_CD
refPOSTerm_CD
refPOSType_Action
refPOSType_Control
refPOSTypeFacilityCD
refPOSXWalkHCUP
refReportCategoryDesc
refReportParameterGroups
refReportParameters
refSProcType
refSubscriptionType
refTransactionType
refUPINProvSpecCd
rptAdvMetHCUPCoreMA
rptAdvMetHCUPCoreMABackup
rptHCUP_PTCA
rptHosp
rptMassMedBoard
rptNH
rptNH_Backup
rptNH2
rptNHDetail
rptPhysician_MA
rptPhysician_MA2
SEP04
Sheet1$
stgHcupCore
stgHCUPCore_MA
stgMassMedBoard
stgNH
stgPOS
stgUPIN
TablesUsedBySProcs
testbit

TestPtcaVolume
UPIN
Wage_hist
xHCUPDataTable
xPOSDataTable
xProdHCUP_MA
xxxDonkeysGoneWild
xxxDonkeyTest
xxxrefMmbProviderQuery
zcta5
ZipCodes
ZipCodesFiveMileRadius
ZipHsa
ziphsahrr03
ziphsahrr03$
ZipLatLong
- Views
_BadMassMedBoard
_HospTake1
_MasterHospitals
AdvancedMetrics
AdvancedMetricsSums1
AdvancedMetricsTest2
AdvancedMetricsTest4
AdvancedMetricsWIthRatios1
AhallDs
BuildNHDetailReport
BuildNHReport
BuildRptNH
CBSAProvider
CheckMassMed_HospAssoc
Conditions
Feas_rptHospital
HCUPData
ICD9DiagCodeDesc
ICD9DRGCodeDesc
ICD9MDCCodeDesc
ICD9ProcCodeDesc
MarksView
MassachusettsPhysicians
MassMedBoardZip

MatchUPINLevel1
MatchUPINLevel2
MatchUPINToMassMed
MoreAdvancedMetricsJunk
NHAvgDefAll
NHAvgDefByState
OtherHospitals1
PhysiciansPerHospital
POSData
Procedures
ProviderNumbers
Providers
RecentErrorMessages
RecentLoginActivity
RecentReportActivity
RecentStoredProcedures
rptMassMedBoardFieldLengths
StoredProcedureUsage
UniqueMassMedBoardPhysicianIDs
UPINLastName
WOrkOnReportingHCUP2

Feasibility Phase Prototype
- Web Application Source Code
- Web Page (except for content and pictures)
- Data Import Program Source Code
- NHIC UPIN Data Miner

Documents
- Security Analysis
- Functional Specification for Web Site V1
- Functional Specification for Web Site V2
- Revised Levy-Jennings Chart (nealsproposedchart.xls)

Physician Data Website Extraction Programs
Source code for programs that extract data for physicians licensed in the following states:
AZ
AZ Updater
CA

CO
CT
DE
DC
FL
GA
IN
MA
MA - Updater
MI
MO
MT
NC
NH
NJ
NV
NY
OH
PA
RI
SC
TN
VA
WV
WI

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)_____

   Paul O'Mara, et al. v. Mark J. Donnelly, et al.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   | | | |
   |---|---|---|
   | ☐ | I. | 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT. |
   | ☒ | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.     for patent, trademark or copyright cases |
   | ☐ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. |
   | ☐ | IV. | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. |
   | ☐ | V. | 150, 152, 153. |

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   N/A

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐       NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

   YES ☐       NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   N/A       YES ☐       NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☐       NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES ☒       NO ☐

   A.   If yes, in which division do all of the non-governmental parties reside?

   Eastern Division ☒          Central Division ☐          Western Division ☐

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

   Eastern Division ☐          Central Division ☐          Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   N/A       YES ☐       NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _____   Dale C. Kerester, Esq., Lynch, Brewer, Hoffman

ADDRESS _____   & Fink, LLP, 101 Federal Street, Boston, MA

TELEPHONE NO. _____   (617) 951-0800

(CategoryForm.wpd  - 5/2/05)

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Paul O'Mara and Neal O'Mara

## DEFENDANTS

2005 SEP -7 P 4: 19

Mark J. Donnelly, Sebago Partners, Inc. and UCompareHealthcare, LLC
DISTRICT COURT
DISTRICT OF MASS

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Middlesex, MA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
         TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Dale C. Kerester; Lynch, Brewer, Hoffman
& Fink, LLP; 101 Federal Street, Boston, MA
02110; (617) 951-0800

ATTORNEYS (IF KNOWN)

James B. Zimpritch, Esq.; Pierce Atwood
One Monument Square; Portland, ME 04101
(207) 791-1100

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
   Plaintiff

☒ 3 Federal Question
   (U.S. Government Not a Party)

☐ 2 U.S. Government
   Defendant

☐ 4 Diversity
   (Indicate Citizenship of Parties
   in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                  AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☒ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
   Proceeding

☐ 2 Removed from
   State Court

☐ 3 Remanded from
   Appellate Court

☐ 4 Reinstated or
   Reopened

☐ 5 Transferred from
   another district
   (specify)

☐ 6 Multidistrict
   Litigation

☐ 7 Appeal to District
   Judge from
   Magistrate
   Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

17 U.S.C. §§ 101, et seq.
Declaratory Judgment, copyright action for software design and development as well
as related state law claims for damages

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

Declaratory judgment, preliminary and
permanent injunction and damages

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ YES    ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE

N/A

DOCKET NUMBER _____

DATE
9/7/05

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____