UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PAUL O'MARA and NEAL O'MARA <br> Plaintiffs, <br> v. <br><br> MARK J. DONNELLY, <br> SEBAGO PARTNERS, INC, and <br> UCOMPAREHEALTHCARE, LLC <br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-11824-REK |

### REPLY TO COUNTERCLAIM

Now come the Plaintiffs/Defendants-in-Counterclaim, Paul O'Mara and Neal O'Mara (collectively referred to as "the O'Maras"), and hereby answer the corresponding numbered paragraphs of the Counterclaim of Defendants/Plaintiffs-in-Counterclaim, Mark J. Donnelly ("Donnelly"), Sebago Partners, Inc. ("Sebago Partners") and UCompareHealthCare, LLC ("UCHC"), as follows:

1. The O'Maras admit the first sentence of paragraph 1 of the Counterclaim and, upon information and belief, admit the second sentence of paragraph 1 of the Counterclaim.

2. Admitted.

3. The O'Maras are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3 of the Counterclaim except that the O'Maras admit that UCHC is a limited liability company with a principal place of business in Framingham, Massachusetts.

4. Admitted.

5. The O'Maras deny paragraph 5 of the Counterclaim except that the O'Maras admit that Neal O'Mara is an individual who had resided at 12221 Papaya Ct. NE, Albuquerque,

NM 87111.  The O'Maras further state that Neal O'Mara now resides at 2 Townsend Street, Apartment No. 4-0220, San Francisco, CA 94107.

## FACTS

6.  The O'Maras deny the allegations of paragraph 6 of the Counterclaim except that the O'Maras admit that in or about June 2004, Donnelly and Paul O'Mara entered into an agreement for the development of Laundry Management computer software programming (the "Laundry Management Software") that would manage day-to-day Laundromat operations including utility usage, machine maintenance, coin count tracking, and related matters.  The O'Maras further admit that Paul O'Mara graduated college in 2001.  The O'Maras further state that Paul O'Mara was and is a highly skilled software designer and developer, with experience in Technical Writing and Programming, and was approached by Donnelly's son, Ryan Donnelly, regarding the development of the Laundry Management Software.

7.  The O'Maras deny the allegations of paragraph 7 of the Counterclaim except that the O'Maras admit and further state that Donnelly and Paul O'Mara agreed that Donnelly would receive 80% of the proceeds from the Laundry Management Software and that Paul O'Mara would receive 20% of the proceeds.  The O'Maras further state that Donnelly represented that he would prepare a written document to memorialize the parties' agreement.

8.  The O'Maras deny the allegations of paragraph 8 of the Counterclaim except that the O'Maras admit that Donnelly provided a memorandum dated September 27, 2004.  The memorandum speaks for itself.

9.  The O'Maras deny the allegations of paragraph 9 of the Counterclaim except that the O'Maras admit and further state that Donnelly (individually and on behalf of Sebago Partners) and Paul O'Mara entered into an agreement pursuant to which Paul O'Mara agreed to

perform certain software design and development and related services in connection with the new venture (an entity now known as UCompareHealthCare LLC), and Donnelly (individually and upon information and belief on behalf of Sebago Partners) agreed to issue to Paul O'Mara 2.5% of the voting stock in UCHC upon the incorporation of such entity and an additional 10% of such stock at a later time.

10. The O'Maras deny the allegations of paragraph 10 of the Counterclaim except that the O'Maras admit and further state that Donnelly presented Paul O'Mara with a document entitled "Confidentiality / Proprietary Information Agreement" (hereby referred to as the "Confidentiality / Proprietary Information Document (Paul O'Mara)" at a meeting on September 16, 2004, that Donnelly requested that Paul O'Mara sign such document, that Paul O'Mara signed such document, and that a true and accurate copy of the document is attached to the Complaint as Exhibit 1.

11. The O'Maras deny the allegations of paragraph 11 of the Counterclaim except that the O'Maras admit that paragraph 2 of the Confidentiality / Proprietary Information Document reads substantially as set forth in paragraph 11 of the Counterclaim.

12. The O'Maras deny the allegations of paragraph 12 of the Counterclaim except that the O'Maras admit that the document defines Proprietary Information substantially as set forth in paragraph 12 of the Counterclaim.

13. The O'Maras deny the allegations of paragraph 13 of the Counterclaim except that the O'Maras admit that Donnelly and Sebago Partners, by their counsel, presented Paul O'Mara with a document entitled "Sebago Partners, Inc.," a true and accurate copy of which is attached to the Complaint as Exhibit 2, and that Paul O'Mara executed the document. The O'Maras further state that the document speaks for itself. The O'Maras admit that Paul O'Mara

did not attach a sheet to the document identifying "INVENTIONS" and that, upon information and belief, others executed a similar document.

14. The O'Maras deny the allegations of paragraph 14 of the Counterclaim except that the O'Maras admit that Paul O'Mara recommended Neal O'Mara, who is Paul O'Mara's brother, to Donnelly and others and further admit that Sebago agreed, in or around November 17, 2004, to engage Neal O'Mara to perform certain specific programming for the feasibility phase of the project.

15. The O'Maras deny the allegations of paragraph 15 of the Counterclaim except that the O'Maras admit that in or about January, 2005, Donnelly, Sebago Partners, and UCHC entered into an agreement with Neal O'Mara pursuant to which Neal O'Mara agreed to perform certain programming defined in a "Specifications For Contractual Programming For Feasibility Phase Prototype" document and Sebago Partners would pay him $5,000 for such work upon completion of that deliverable.

16. The O'Maras deny the allegations of paragraph 16 of the Counterclaim except that the O'Maras admit that on or about November 26, 2004, Sebago Partners, by Donnelly, and Neal O'Mara executed a document entitled "Sebago Partners, Inc.", a true and accurate copy of which is attached to the Complaint as Exhibit 3, and, upon information and belief, that others executed similar documents. The O'Maras further admit that on or about February 22, 2005, Donnelly and Neal O'Mara executed a document entitled "Confidentiality / Proprietary Information Agreement", a true and accurate copy of which is attached to the Complaint as Exhibit 4.

17. The O'Maras deny the allegations of paragraph 17 of the Counterclaim and further state that Paul O'Mara was told to speak with Rob Cohen, Donnelly's and Sebago

Partners' counsel, with any questions.  The O'Maras further state that Mr. Cohen stated that the document "covered ownership of inventions" and, in response to Paul O'Mara's questions about the document and whether it applied to the types of works that had been produced, Mr. Cohen responded that the parties had not invented anything yet.  The O'Maras further state that Neal O'Mara also was made aware of Attorney Cohen's statements.

18. The O'Maras deny the allegations of paragraph 18 of the Counterclaim except that the O'Maras admit that Neal O'Mara received a check for $2,500 after the initial review of the feasibility prototype and received an additional $2,500 when the March 1 review was completed.  The O'Maras further admit that the O'Maras continued to work in connection with the UCHC project.

19. The O'Maras deny the allegations of paragraph 19 of the Counterclaim except that the O'Maras admit and further state that Donnelly (individually and upon information and belief on behalf of Sebago Partners) agreed to issue to Paul O'Mara 2.5% of the voting stock in UCHC upon the incorporation of such entity and an additional 10% of such stock at a later time.

20. The O'Maras deny the allegations of paragraph 20 of the Counterclaim except that the O'Maras admit that Paul O'Mara recommended to the remaining individuals working on the project that Brian Richardson no longer work on the project due to lack of productivity.

21. Denied.

22. The O'Maras deny the allegations of paragraph 22 of the Counterclaim except that the O'Maras admit that Paul O'Mara, due to concerns regarding the performance of Mark Donnelly and Jeff LaPointe, prepared the document entitled "Critical Mistakes So Far."  The document speaks for itself.

23. The O'Maras deny the allegations of paragraph 23 of the Counterclaim except that the O'Maras admit that Paul O'Mara had recommended from the beginning of the project that technical consultants be utilized after the initial version of the functional specification was ready and that, upon information and belief, certain technical consultants were utilized.

24. The O'Maras deny the allegations of paragraph 24 of the Counterclaim except that the O'Maras admit that Donnelly, on May 31, 2005, provided the O'Maras with a memorandum (regarding "Membership Interests") from Donnelly's, Sebago Partners', and UCHC's corporate counsel, Pierce Atwood LLP of Portland, Maine, dated May 27, 2005, an offer letter, a document entitled UCompareHealthcare, LLC Operating Agreement and a document entitled Non-Disclosure, Non-Solicitation and Non-Competition Agreement.

25. Denied.

26. The O'Maras deny the allegations of paragraph 26 of the Counterclaim except that the O'Maras admit that Paul O'Mara wrote an email to Neal O'Mara on May 24, 2005 at or about 1:55 p.m.. The email speaks for itself.

27. The O'Maras deny the allegations of paragraph 27 of the Counterclaim except that the O'Maras admit that Paul O'Mara wrote an email to Neal O'Mara on May 24, 2005 at or about 1:55 p.m.. The email speaks for itself.

28. The O'Maras deny the allegations of paragraph 28 of the Counterclaim except that the O'Maras admit that Neal O'Mara wrote an email to Paul O'Mara on May 24, 2005. The email speaks for itself.

29. The O'Maras deny the allegations of paragraph 29 of the Counterclaim except that the O'Maras admit that Paul O'Mara and Neal O'Mara exchanged emails on May 26, 2005. The emails speak for themselves.

30. The O'Maras deny the allegations of paragraph 30 of the Counterclaim except that the O'Maras admit that on June 1, 2005, the O'Maras, by their counsel's e-mail to Donnelly, notified Donnelly, Sebago, and UCHC that the proposed written agreements that had been provided to the O'Maras did not reflect the agreements of the parties and requested that Donnelly review the proposed written agreements and respond to such notification. The O'Maras further notified Donnelly, Sebago, and UCHC that "[a]ny unauthorized use of the materials created by the O'Maras would be a violation of their intellectual property rights."

31. The O'Maras deny the allegations of paragraph 31 of the Counterclaim except that the O'Maras admit that by letter dated June 9, 2005, UCHC, by its counsel, stated that "UCHC considers the relationship between the O'Maras and UCHC terminated effective as of June 1, 2005."

32. The O'Maras deny the allegations of paragraph 32 of the Counterclaim except that the O'Maras admit that they filed certain registration applications as more fully set forth in the Complaint.

33. Denied.

34. The O'Maras deny the allegations of paragraph 34 of the Counterclaim except that the O'Maras admit that they have certain binders and other information related to their work in connection with UCHC.

## COUNT I – Declaratory Judgment

35. The O'Maras incorporate by reference all of the above and below paragraphs.

36. The O'Maras deny the allegations of paragraph 36 of the Counterclaim except that the O'Maras admit that there exists an actual controversy and a conflict of asserted rights between the parties with respect to the copyrights in the Works (as defined in the Complaint) and

with respect to the Confidentiality / Proprietary Information Agreement Document (Paul O'Mara), the Sebago Partners, Inc. Document (Paul O'Mara), the Sebago Partners, Inc. Document (Neal O'Mara), the Confidentiality / Proprietary Information Agreement Document (Neal O'Mara) and the parties' agreements regarding the issuance of equity in UCHC, as more fully set forth in the Complaint.

37. The O'Maras admit that the Plaintiffs-in-Counterclaim are interested parties under 28 U.S.C. § 2201 and seek a declaration pursuant to such section. The O'Maras otherwise deny the allegations of paragraph 37 of the Counterclaim.

38. The O'Mara's deny the allegations of paragraph 38 of the Counterclaim and the relief requested therein.

## COUNT II – Copyright Infringement

39. The O'Maras incorporate by reference all of the above and below paragraphs.

40. The O'Maras deny the allegations of paragraph 40 of the Counterclaim except that the O'Maras state that the document speaks for itself.

41. The O'Maras deny the allegations of paragraph 41 of the Counterclaim except that the O'Maras state that the document speaks for itself.

42. The O'Maras admit that neither Paul O'Mara nor Neal O'Mara attached a sheet to the documents identifying "INVENTIONS." The O'Maras further state that Mr. Cohen, counsel for Plaintiffs-in-Counterclaim, stated that the document "covered ownership of inventions" and, in response to Paul O'Mara's questions about the document and whether it applied to the types of works that had been produced, Mr. Cohen responded that the parties had not invented anything yet. The O'Maras further state that Neal O'Mara also was made aware of Mr. Cohen's statements.

43. Denied.

44. The O'Maras deny the allegations of paragraph 44 of the Counterclaim except that the O'Maras admit that paragraph 53 of the Complaint states as follows:

> The O'Maras have taken all necessary measures to protect and maintain the value of their Works and they have filed registration applications and fees for the exclusive rights and privileges in and to the copyrights in the Works under the Copyright Act, 17 U.S.C. §§ 101, *et seq.* The O'Mara's have received the following Certificates of Registration: TXu1-244-572, TXu1-223-149, TXu1-223-148, TXu1-223-146, TXu1-223-147, TXu1-223-150, TXu1-223-296, and TXu1-244-125. Additional registrations are currently pending.

45. Denied.

46. Denied.

### COUNT III – Breach of Contract

47. The O'Maras incorporate by reference all of the above and below paragraphs.

48. Denied.

49. Denied.

### COUNT IV – Breach of Covenant of Good Faith and Fair Dealing

50. The O'Maras incorporate by reference all of the above and below paragraphs.

51. Admitted.

52. Denied.

53. Denied.

### COUNT V – Misappropriation of Trade Secrets

54. The O'Maras incorporate by reference all of the above and below paragraphs.

55. The O'Maras deny the allegations of paragraph 55 of the Counterclaim except that the O'Maras admit that the documents set forth certain provisions regarding the subject matter of confidential information. The documents speak for themselves.

56. Denied.

57. Denied.

58. Denied.

### COUNT VI – Conversion

59. The O'Maras incorporate by reference all of the above and below paragraphs.

60. Denied.

### AFFIRMATIVE DEFENSES

#### First Affirmative Defense

The Counterclaim (the "claims") fails to state a claim upon which relief can be granted.

#### Second Affirmative Defense

The claims are barred because the O'Maras duly satisfied their obligations.

#### Third Affirmative Defense

The claims are barred because Plaintiffs-in-Counterclaim repudiated the agreements between the parties.

#### Fourth Affirmative Defense

The claims are barred for failure to satisfy a condition precedent, including but not limited to Plaintiffs-in Counterclaim's failure to satisfy their performance obligations under the agreements.

#### Fifth Affirmative Defense

The claims are barred due to Plaintiffs-in-Counterclaim's breach of the agreements, as more fully set forth in the Complaint.

### Sixth Affirmative Defense

Any damage allegedly incurred by Plaintiffs-in-Counterclaim was caused by Plaintiffs-in-Counterclaim or parties other than the O'Maras.

### Seventh Affirmative Defense

The claims are barred pursuant to the terms of the agreements between the parties.

### Eighth Affirmative Defense

The claims are barred by the doctrines of estoppel, laches, and waiver.

### Ninth Affirmative Defense

The claims are barred by the doctrine of unclean hands.

### Tenth Affirmative Defense

Plaintiffs-in-Counterclaim failed to mitigate their claim of damages.

### Eleventh Affirmative Defense

The claims are barred due to a failure of consideration.

### Twelfth Affirmative Defense

Plaintiffs-in-Counterclaim do not have a right to a jury trial with respect to certain of their claims.

### Thirteenth Affirmative Defense

The O'Maras incorporate by reference the allegations and claims set forth in the Complaint.

WHEREFORE, Plaintiffs/Defendants-in-Counterclaim, Paul O'Mara and Neal O'Mara, request that the Court dismiss each and every count of the Counterclaim with prejudice and with an award of costs and attorney's fees to Plaintiffs/Defendants-in-Counterclaim.

**JURY DEMAND**

Plaintiffs/Defendants-in-Counterclaim demand a trial by jury on all issues so triable.

**PLAINTIFFS/DEFENDANTS-IN-COUNTERCLAIM,**

**PAUL O'MARA AND NEAL O'MARA**

By their attorneys,

/s/
Dale C. Kerester, Esq.
LYNCH, BREWER, HOFFMAN & FINK, LLP
101 Federal Street, 22nd Floor
Boston, MA  02110-1800
(617) 951-0800
dkerester@lynchbrewer.com


/s/
William E. O'Brien, Esq.
Law Office of William E. O'Brien, Esq.
363 Bailey Road
Holden, MA  01520
(508) 829-5185
william@masstechlawyer.com


Dated:   December 12, 2005