UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PAUL O'MARA and NEAL O'MARA | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 05-11824-REK |
| MARK J. DONNELLY, SEBAGO PARTNERS, INC., and UCOMPAREHEALTHCARE, LLC | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs and Defendants-in-Counterclaim Paul O'Mara and Neal O'Mara (collectively referred to as the "O'Maras") hereby submit this memorandum in opposition to the Motion for Preliminary Injunction filed by Defendants and Plaintiffs-in-Counterclaim Mark J. Donnelly, Sebago Partners, Inc., and UCompareHealthCare, LLC (collectively referred to as "Donnelly"). In support of their opposition, the O'Maras hereby submit and incorporate by reference the Affidavit of Paul O'Mara "Paul O'Mara Affidavit" and the Affidavit of Neal O'Mara ("Neal O'Mara Affidavit").

By his Motion, Donnelly does not seek to preserve the status quo pending a final determination on the merits of the parties' claims to ownership of the copyright interests at issue but instead effectively asks the Court to enter a final judgment on the parties' claims. More specifically, Donnelly does not seek an order requiring the O'Maras to refrain from using or

assigning the copyrights pending final judgment[1] but instead asks the Court to order the O'Maras to "immediately transfer and assign all copyrights in the Works and to cooperate and assist in copyrighting any other materials covered under the Detailed Confidentiality Agreement." Stated otherwise, Donnelly asks the Court, on a preliminary basis and without the benefit of any evidentiary hearings, to determine the ownership of the copyrights in the Works and enter an order of specific performance.[2]

Donnelly's Motion should be denied not only because it improperly seeks a final determination but also because Donnelly fails to demonstrate a likelihood of success on the merits of his claim to wrest ownership of the O'Maras' copyrights or on his misappropriation claim. The O'Maras are the authors and owners of the Works, and they did not misappropriate any claimed trade secret or disclose any claimed confidential information to any competitor of UCHC. Donnelly's claim to ownership of the Works authored by the O'Maras (over thousands

---

[1] As counsel for the O'Maras advised Donnelly's counsel in the Rule 7.1 conference before the filing of the Motion, the O'Maras have not assigned, transferred or used the copyrights and agree to provide Defendants with sixty days advance notice of any intent to assign, transfer or use the copyrights. Accordingly, the O'Maras seek to preserve the status quo pending a determination from the Court regarding the parties' respective claims.

[2] Donnelly also seeks an order requiring the O'Maras to "immediately return to Sebago/UCHC all materials containing the trade secrets and other confidential information of Sebago/UCHC and to refrain from disclosing the contents of such confidential materials to any other persons in compliances with the General and Detailed Confidentiality Agreements." As counsel for the O'Maras advised Donnelly's counsel in the Rule 7.1 conference before the filing of the Motion, and as is referenced in the Stipulation dated December 20, 2005 and filed with the Court, the O'Maras have not disclosed the contents of any claimed confidential materials to any competitor of UCHC. As counsel for the O'Maras also advised Donnelly's counsel in the Rule 7.1 conference before the filing of the Motion, the O'Maras, without waiver of or prejudice to their defenses to Donnelly's claims regarding confidentiality obligations, are willing to enter into an appropriate stipulated confidentiality order in the form routinely used for production and treatment of specific documents claimed to be confidential. The O'Maras' counsel further stated that the O'Maras would make the "binder" and "manual" (referenced at page 15 of Donnelly's Memorandum) available to Donnelly's counsel so that Donnelly's counsel can assert its claims of confidentiality, mark the documents, and then produce copies of such documents subject to an agreement that they would be used only for purposes of the litigation.

of hours and generally without any compensation) rests entirely upon a document[3] that does not purport to assign any copyright interests and which in any event is unenforceable due to the lack of the contemplated consideration.

Pursuant to his Counterclaim and Motion, Donnelly seeks to divest the O'Maras of their ownership of the Works (created by them and identified in their affidavits) that the O'Maras authored over thousands of hours and for which they did not receive compensation.

**FACTS**

Paul O'Mara, in response to an inquiry from Mr. Donnelly's son, commenced work in June, 2004 on the design and development of certain laundry management software. He used his own equipment and software development tools and worked over 330 hours on that project from June through October, 2004 until Mr. Donnelly "retired" the project. Paul O'Mara Affidavit at ¶¶ 3-6, 34, 35. After a meeting with Mr. Donnelly on September 16, 2004, Paul O'Mara started work on a new venture - the creation of a website that allows users to compare physicians, hospitals or nursing homes based on meaningful metrics. During the period from September, 2004 through May, 2005, Paul O'Mara worked approximately 1,500 hours on the design, creation and documentation of the prototype of the website and preparation of the functional specifications for the production version. Paul O'Mara Affidavit at ¶¶ 9, 12, 18-20. Paul O'Mara designed, developed, created, and authored the works identified in the document attached as Exhibit B to his affidavit. Those works contain his original ideas, source code, and writing. Paul

---

[3] As is immediately apparent from even a cursory review, the document (entitled "Sebago Partners, Inc.") is anything but "clear and unambiguous."

O'Mara received no compensation or consideration for any of those works. Paul O'Mara Affidavit at ¶¶ 19, 34, 35.

Paul O'Mara's brother, Neal O'Mara, also worked on the health care project. During the time period from November, 2004 through May, 2005, he worked approximately 1,200 hours on the project. Neal and Paul, who were the only programmers working on the project during the time that they were involved, created and documented the prototype of the website and also wrote the functional specifications for the production version. Neal O'Mara designed, developed, created, and authored the works identified in the document attached as Exhibit A to his affidavit. Those works contain his original ideas, source code, and writing, and much of his code was never even on any of UCHC's computers. Neal O'Mara Affidavit at ¶¶ 6-9. With the limited exception of a $5,000 payment for certain specified contract work, Neal O'Mara has not at any time received any payment, compensation, stock, or other consideration for any of his work on the project. Neal O'Mara Affidavit at ¶ 13.

On May 31, 2005, after the O'Maras had developed the prototype for the website and provided Mr. Donnelly with final design components for the production version, Mr. Donnelly provided the O'Maras with certain documents (such as the UCompareHealthcare LLC Operating Agreement) which purported to set forth "the basis of our legal relationship." The documents, however, did not reflect (and in fact were entirely inconsistent with) the oral agreements previously reached between Donnelly and the O'Maras, pursuant to which Donnelly had, among other things, promised to issue voting stock to the O'Maras upon the incorporation of UCHC in consideration for their design and development work. For example, rather than issuing voting stock, the documents provided that the O'Maras, in exchange for future services, could receive

Class B membership interests in a limited liability company, which such interests (valued at zero as of the date of grant) would only be issued upon commencement of work full time without pay and which were in any event subject to forfeiture. In contrast, the documents provided that Mr. Donnelly would receive Class A preferential membership interests, which such interests vested immediately and were valued as of the date of issuance. Paul O'Mara Affidavit at ¶¶ 26-30, and Exhibits E and F attached thereto.

When the O'Maras raised questions regarding the documents (by their counsel stating: "I kindly request that you review them and let me know if, in your view, the agreements reflect the oral agreements between you and the O'Maras"), Donnelly terminated the O'Maras. Paul O'Mara Affidavit at ¶¶ 31-33. The O'Maras then filed registration applications and fees for the exclusive rights and privileges in and to the copyrights in the Works under the Copyright Act. Paul O'Mara Affidavit at ¶ 36.

While Donnelly lavishly praised the O'Maras' work during their involvement in the project, Donnelly now criticizes the O'Maras' work (claiming that the work was "poor and needed to be completely revised.") Paul O'Mara Affidavit at ¶37 (item 18); Donnelly Affidavit at ¶¶ 18, 26. Notwithstanding such criticism, Donnelly now seeks ownership of the Works and acknowledges that their Works are "incalculably valuable to UCHC." Id. The sole ground for his ownership claim is his assertion that the O'Maras are obligated to assign their copyright interests pursuant to a "Sebago Partners, Inc. Document" (referred to by Donnelly as the "Detailed Confidentiality Agreement") executed by the O'Maras. See Donnelly's Memorandum at pp. 10-12. The provisions of the document, which are stated to be in consideration for the "engagement as an independent contractor by [Sebago]," do not refer to an assignment of

copyrights interests notwithstanding a recitation of other interests that are identified as the "inventions" that are the subject of the document. Complaint, at Exhibits 2 and 3.

## STATEMENT OF THE CASE

The O'Maras filed their Complaint on September 7, 2005 and seek, among other claims, a declaratory judgment regarding their copyright interests. The Defendants filed an Answer and Counterclaim on November 21, 2005 (the last day of the sixty period after acceptance and acknowledgment of service) and later filed their motion for preliminary injunction on December 14, 2005.

## STANDARD

In order to obtain a preliminary injunction pursuant to Fed. Civ. P. 65(a), Donnelly must demonstrate: 1) a likelihood of success on the merits, 2) irreparable injury, 3) that such injury outweighs any harm that the injunction would inflict on the non-moving party, and 4) that the injunction would not adversely affect the public interest. Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 220 (1st Cir.1989); TEC Engineering Corp. v. Budget Molders Supply Inc., 82 F.3d 542, 544 (1st Cir. 1996). To the extent that Donnelly's motion seeks relief upon a claim of copyright infringement, the most important factor as to whether the Court should issue a preliminary injunction is the likelihood of success on the merits of its copyright claim. Flomerics Ltd. v. Fluid Dynamics International, Inc., 880 F.Supp. 60, 61-62 (D. Mass. 1995). As the Court in Flomerics noted:

> These requirements have, however, been modified slightly in copyright cases.
>
> The First Circuit Court of Appeals evaluated the preliminary injunction standard with respect to cases involving claims of copyright infringement in Concrete Machinery Co. v. Classic Lawn Ornaments, 843 F.2d 600, 611 (1st Cir.1988). In that case, the First

>Circuit reached three significant conclusions:  1) if likelihood of success on the merits is shown, irreparable injury is presumed; 2) the public interest is not a "genuine" issue because "it is virtually axiomatic that the public interest can only be served by upholding copyright protections"; and 3) likelihood of success on the merits should "be placed in the scales when [the court] weighs the balance of the harms."  *Id.* at 611-12.

Thus, while the modified standard applies to Donnelly's motion to the extent that the Donnelly asserts his copyright infringement claim as grounds for the motion, the requirements for issuance of a preliminary injunction are not modified to the extent that Donnelly asserts his misappropriation claim as grounds for the motion.

## ARGUMENT

**I. DONNELLY IS UNLIKELY TO SUCCEED ON THE MERITS OF HIS COPYRIGHT INFRINGEMENT CLAIM.**

In order for Donnelly to show a likelihood of success on his claim of copyright infringement, he must show:  1) ownership of a valid copyright, and 2) copying of the protected work by an alleged infringer.  Flomerics Ltd. v. Fluid Dynamics International, Inc., 880 F.Supp. at 62 (citing Concrete Machinery Co. v. Classic Lawn Ornaments, 843 F.2d 600, 605 (1st Cir.1988) and Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, at 813 (1st Cir.1995)).

### A. Donnelly Cannot Show Ownership Of The Copyrights In The Works Created By The O'Maras.

1. The O'Maras, As the Authors, Are The Owners Of The Works In Dispute.

The O'Maras created and authored the Works.[4]  Paul O'Mara Affidavit at ¶¶ 6, 12, 18-20, and 37 (at items 22, 27-29); Neal O'Mara Affidavit at ¶¶ 6-9, and 14 (at items 5, 27-29). The

---

[4] The O'Maras clearly and unequivocally stated in their affidavits that they authored the Works, and Donnelly submits no evidence to the contrary and does not contend that the Works were authored by someone other than the O'Maras.  While Donnelly contends that there were other team members who "worked … on the startup of UCHC", Donnelly does not allege that any of those other individuals authored the Works (as opposed to working on some other aspect of the

O'Maras are, by law, owners of the works they created, as ownership of a work "vests initially in the author or authors of the work." Copyright Act, 17 U.S.C. §201 (a).[5] <u>The Saenger Organization, Inc. v. Nationwide Insurance Licensing Assoc., Inc.</u>, 119 F.3d 55, 59 (1st Cir. 1997).

      2.      The Copyrights Owned By The O'Maras Did Not Convey By "Operation Of Law Or Under The Work Made For Hire Doctrine."

Donnelly does not contend that the O'Maras were working as employees or that ownership in the copyrights was otherwise transferred to Donnelly as "works made for hire."[6] 17 U.S.C. § 201(b); Complaint ¶50; Answer ¶50; Counterclaim ¶¶ 6, 9, 14. To the contrary, Donnelly's sole basis for his claim to ownership of the copyrights is his contention that the O'Maras conveyed their interests pursuant to the Sebago Partners, Inc. Document (referenced by Donnelly as the "Detailed Confidentiality Agreement"). Donnelly's Memorandum at pp. 10-12. Thus, while ownership of a copyright may be transferred "in whole or in part by any means of conveyance or by operation of law," the only issue presented here is whether the O'Maras

---

startup). Donnelly's Memorandum at p. 5. Although Donnelly criticizes the O'Maras' work, he concedes that the O'Maras performed work. Counterclaim ¶¶ 21- 24; Answer ¶ 15; Donnelly Affidavit ¶¶ 6, 7, 14, 18.  that

[5] Even if the works created by the O'Maras are contributions to a collective work, ownership of the separate work vests in the authors of the works. Copyright Act, 17 U.S.C. §201 ( c).

[6] Section 101 of the Copyright Act provides that a work made for hire is "(1) a work prepared by an employee within the scope of his or her employment; or (2) a work specially ordered or commissioned for use…if the parties expressly agree that the in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C §101. The Sebago Partners, Inc. Document could not in any event be considered as a written instrument conveying ownership under the "work made for hire doctrine" as the instrument neither specially ordered or commissioned a work, nor contained an express agreement that the work shall be considered a work made for hire. <u>Id</u>; <u>Saenger Organization</u>, supra; <u>Playboy Enterprises, Inc. v. Dumas</u>, 53 F. 3d 549, 558 (2nd Circ. 1995). In any event, Donnelly concedes that the work made for hire doctrine has no application to this case. Donnelly Memorandum at p. 12.

conveyed their copyright ownership to Donnelly pursuant to Sebago Partners, Inc. Document. 17 U.S.C. §201(d)(1).

### 3. The Sebago Partners, Inc. Document Does Not Require The O'Maras To Assign Their Copyrights.

Since the O'Maras were both the authors and owners of the works they created, Donnelly may claim ownership of the Works only if the O'Maras validly assigned the copyrights by an enforceable written instrument. Pursuant to the Copyright Act, a transfer of ownership of a copyright is not valid unless it is in writing and signed by the owner of the rights conveyed. 17 U.S.C. § 204(a).

#### A. Transfer

In order to evidence a transfer of the O'Maras' copyrights, the Sebago Partners, Inc. Document must evidence the mutual intent to transfer the copyright interest. Nimmer on Copyrights, § 10.03 [A][2]. "[I]n order to achieve that result, the writing must be construed to refer to the domain of copyright ownership rather than to other interests." Nimmer, supra; Bieg v. Hovnanian Enters, Inc., 157 F. Supp. 2d 475, 480 – 82 (E.D. Pa. 2001). "It must also arise above vagueness to clue the reader into its desired intent." Nimmer, supra, Forasté v. Brown Univ., 290 F. Supp.2d 234, 240 (D.R.I. 2003).

District courts in the First Circuit have recognized the need for a stringent standard for transfers under Section 204(a). As the Court in Forasté v. Brown Univ, 290 F.Supp. at 240, noted:

> In Konigsberg Int'l, Inc. v. Rice, Judge Kozinski hinted at a "meeting of the minds" requirement, intimating that a valid section 204(a) writing should be the product of the parties' negotiations. 16 F.3d 355, 357 (9th Cir.1994). In this case, there is no evidence of a negotiation or "meeting of the minds" between Forasté and Brown regarding the contested photographs. There is no indication that Forasté ever bargained for the copyrights he now seeks, for example. Indeed, it would be impossible for the Policy to

9

have been the product of a "meeting of the minds" between Brown and Forasté, since Forasté never even thought about copyright ownership until after his termination.

**Judge Gertner of the District of Massachusetts has cited approvingly a rigorous standard for section 204(a) transfers.**  See Saenger Organization, Inc. v. Nationwide Ins. Lic. Assocs., Inc., 864 F.Supp. 246, 250 (D.Mass.1994) (citing Pamfiloff v. Giant Records, Inc., 794 F.Supp. 933, 937 (N.D.Cal.1992)), aff'd, 119 F.3d 55 (1st Cir.1997). The Pamfiloff criteria for a section 204(a) transfer include:  (1) identification of the subject matter of the agreement; (2) an indication that the parties have come to that agreement; and (3) a reasonably certain statement of the essential terms of the agreement. Id. The Policy does not meet even a single one of these three conditions.

While the approaches of Judges Kozinski and Gertner toward section 204(a) are not universally accepted,[Footnote 7: For example, not every court requires that a valid section 204(a) transfer instrument name the transferee, see, e.g., Sunham Home Fashions, LLC v. Pem-America, Inc., No. 02 Civ. 6284(JFK), 2002 WL 31834477, *7 (S.D.N.Y. Dec.17, 2002), nor that the parties negotiate the terms of the transfer. See, e.g., Zyware, Inc. v. Middlegate, Inc., No. 96 Civ. 2348(SHS), 1997 WL 685336, *4 (S.D.N.Y. Nov.4, 1997).] the requirement that the instrument of transfer be "clear" finds frequent emphasis in other section 204(a) decisions.  At least one circuit court has held that a valid section 204(a) transfer instrument must be explicit, see Saxon v. Blann, 968 F.2d 676, 680 (8th Cir.1992), and many courts have stated that, to be valid, a section 204(a) writing must be clear.  See Bieg v. Hovnanian Enters., Inc., 157 F.Supp.2d 475, 480 (E.D.Pa.2001); Tasini v. New York Times Co., 972 F.Supp. 804, 810 (S.D.N.Y.1997), rev'd on other grounds, 206 F.3d 161 (2nd Cir.2000);  Papa's-June Music, Inc. v. McLean, 921 F.Supp. 1154, 1159 (S.D.N.Y.1996).   Accord Danielson, Inc. v. Winchester-Conant Properties, Inc., 186 F.Supp.2d 1, 11 (D.Mass.2002) (finding that an agreement satisfied section 204(a) that "unequivocally" identified the owner and described the extent of the owner's rights), aff'd on other grounds, 322 F.3d 26 (1st Cir.2003).   (emphasis added)

Any ambiguity concerning the alleged transfer must be interpreted in favor of the original copyright holder in order to satisfy the purpose of Section 204(a) and avoid inadvertent transfers. Cassway v. Chelsea Historic Props., 1993 WL 64633 (E.D.Pa. Mar. 4, 1993);  see also Tasini v. New York Times Co., 972 F.Supp. 804, 810 (S.D.N.Y.), rev'd on other grounds, 206 F.3d 161 (2d Cir.2000).   Section 204(a) "ensures that the creator of a work will not give away his copyright inadvertently and forces a party who wants to use the copyright work to negotiate with the creator to determine precisely what rights are being transferred and at what price." Effects

Assocs., Inc. v. Cohen, 908 F.2d 555, 557 (9th Cir.1990).

Assignments of rights or interests that do not reference rights of reproduction have been held to be ambiguous and therefore invalid under 204(a)  Bieg v. Hovnanian Enters., Inc., 157 F.Supp.2d 475, 480 (E.D.Pa.2001) ("The Assignment of Claims on its face does not relate to the right to control reproduction of the drawings. It cannot be considered an unambiguous transfer of copyright ownership."); Playboy Enterprises v. Dumas, 53 F.3d 549, 564 (2d Cir.1995) (the following legend on the back of a check was held to be ambiguous and therefore not a valid transfer:  "Payee acknowledges payment in full for the assignment to Playboy Enterprises, Inc. of all right, title and interest in and to the following items: [a description of a painting followed]." Pamfiloff v. Giant Records, 794 F.Supp. 933, 936 (N.D.Cal.1992) (holding that an agreement which made no reference to "publishing rights or rights to musical compositions" was not a sufficient writing under Section 204(a)).

The Sebago Partners, Inc. Document is anything but clear and unambiguous.  The document does not "refer to the domain of copyright rather than other interests" and makes no reference at all to the subject matter of the rights to be transferred, the timing of the transfer or any particulars of the deal.  On the contrary, the document omits copyrights when the types of intellectual property to be transferred are listed.  Accordingly, the document did not transfer the O'Maras copyright interests.  See Forasté v. Brown, 290 F. Supp. 2d at 239-240  (The Court noted the following in support of its ruling that a university policy failed to transfer copyright interests in certain photographs:  "It spells out no material terms specific to the contested photographs; in fact, it does not even mention the subject matter of the transfer. The Policy also gives no indication that the parties had clarified their thinking (indeed, that there was any "thinking" about copyright in the photographs at all) or considered any problems that could

potentially arise. … Lastly, the Policy shows an utter absence of precision regarding the rights to be transferred, again for the reason that the photographs are nowhere mentioned, nor are there any details of the purported deal.")

B.   Consideration

The Sebago Partners, Inc. Document fails to transfer the O'Maras' copyright interests for the additional reason that it lacked the contemplated consideration.  The document expressly states that the O'Maras so-called agreements were "[i]n consideration by (sic) my engagement as an independent contractor by [Sebago]."  Stated otherwise, any agreement or obligation of the O'Maras was subject to the consideration of the engagement as an independent contractor.  Donnelly, however, effectively denies that there was any consideration, as he asserts in his pleadings and in his affidavit that he did not enter into any binding obligation to provide any consideration (i.e., compensation or equity).  Moreover, it is undisputed that, with the limited exception of a payment of $5,000 made to Neal O'Mara for certain specified work, the O'Maras did not receive any actual consideration.

Thus, due to the failure of the contemplated consideration, Donnelly's claim to ownership of the copyrights cannot succeed.  <u>Thomas v. Webster Spring Company, Inc.</u> 37 Mass. App. 180, 182-183 (Mass. App. 1994).  In that action, the plaintiff employee invented a novel bedding spring and executed a printed form "Assignment" pursuant to which he assigned to his employer all rights to that invention and to his application for letters patent to that invention "for good and valuable consideration."  The Massachusetts Court of Appeals affirmed the trial court's finding that the referenced "valuable consideration" was 'some fair compensation when the product was marketed."  Notwithstanding that the document was a sealed instrument, the Court of Appeals rejected the employer's contention that consideration was irrelevant and instead ruled that

"[w]hen an instrument under seal promises consideration, failure of consideration can be shown despite the seal." Id. at 183. The Court therefore ruled that "[a]n appropriate remedy, in light of the failure of the defendants to deliver the consideration they were determined to have promised, is to absolve [the employee] of his countervailing promise, the assignment of the patent." Id. See also, The Lottie Joplin Thomas Trust v. Crown Publishers, Inc., 592 F.2d 651, 655 (2nd Cir. 1978) (The court affirmed the district court ruling rejecting the defendants' claims of copyright ownership of certain musical compositions as a result of certain assignments, where, among other reasons, the assignment failed to recite any consideration for the transfer); Ward v. American Mutual Liability Ins. Co., 15 Mass. App. 98, 100-101 (Mass. App. 1983) (court held that employees were excused from obligations under covenants not to compete where the employer wrongfully discharged the employees, noting that "[i]t is well established that a material breach by one party excuses the other party from further performance under the contract."); Bernstein v. W. B. Manuf. Co., 238 Mass. 589, 590 (Mass. 1921) (court noted "the accepted legal maxim" that in a bilateral agreement "both of the mutual promises must be binding or neither will be, for if one of the promises is for any reason invalid the other has no consideration and so they both fall" and held that the agreement at issue was not mutually binding where the manufacturer had the right to "determine the contract" and that no enforceable contract was made); and Gill v. Richmond Co-Operative Assoc. Inc., 309 Mass. 73, 80 (Mass. 1940) (The court ruled that there was no enforceable contract for the sale of milk where "the plaintiffs bound themselves to nothing" and the defendant therefore received no consideration for its promise to sell milk. The court noted that "[t]he only measure of their promise was their own will.")

### B. Donnelly Cannot Demonstrate Infringement

Unlike the conduct at issue in Accusoft Corporation v. Palo, 923 F.Supp. 290, 295 (D.Mass. 1996), where the opposing parties were both attempting to reproduce and sell identical programs, the O'Maras have not attempted to reproduce and sell the Works. To the contrary, the O'Maras merely applied for registrations of the works authored by them and then sought a declaratory judgment to resolve the competing claims of ownership. Such acts are not infringement, as infringement results only from the unauthorized copying of copyrighted material. 17 U.S.C. § 106. In fact, by his Motion, Donnelly seeks to compel the O'Maras to "cooperate and assist in copyrighting any other materials."

## II. DONNELLY IS UNLIKELY TO SUCCEED ON THE MERITS OF HIS MISAPPROPRIATION CLAIM.

In order to prevail on misappropriation claim, Donnelly must prove (1) existence of a trade secret, (2) reasonable steps to preserve secrecy, and (3) use of improper means in breach of a confidential relationship to acquire the secret. TouchPoint Solutions, Inc. v. Eastman Kodak Co., 345 F.Supp.2d 23, 27 (D.Mass. 2004, cited by Donnelly at page 14 of his Memorandum. Other than making some broad and general statements that the Defendants owned some trade secrets, Defendants do not identify with specificity any trade secret that the O'Maras are alleged to have misappropriated. The broad and vague claims made by Donnelly to trade secrets do not suffice to meet their threshold burden of establishing that there is in fact a trade secret, or in defining what the trade secret is for which protection is sought. Julie Research Lab. v. Select Photographic Eng'g, 810 F. Supp. 513, 519 (S.D.N.Y. 1992) ("The burden, however, is on the

plaintiff to define or identify in detail the trade secret or proprietary information it alleges has been misappropriated by defendants.") aff'd in pertinent part 998 F. 2d 65, 67 (2nd. Cir. 1993);

Donnelly has not demonstrated that there was anything unique or secret in any of the items that he is claiming are trade secrets or that the O'Maras used any improper means to acquire the information claimed to be trade secrets. As is set forth in the affidavits of the O'Maras, the information at issue is not unique, is generally publicly available, and was acquired by them in connection with their work on the project. Paul O'Mara Affidavit at ¶ 37 (at item 27-29); Neal O'Mara Affidavit at 14 (at item 27-29).

### III. A PRELIMINARY INJUNCTION IS NOT APPROPRIATE IN ANY EVENT UPON A BALANCING OF THE HARMS.

Although irreparable harm is presumed when a plaintiff establishes a prima facie case of copyright infringement, "it is well established that undue delay in seeking a preliminary injunction may rebut this presumption." Markowitz Jewelry Co., Inc. v. Chapal/Zenray, Inc., 988 F. Supp. 404, 406-407 (S.D.N.Y. 1997). In that action, the court held that the moving party's delay, including a two month delay after the filing of the action and a thirteen month delay after becoming aware of the conduct at issue, precluded a grant of motion. See also, Zitz v. Pereira, 965 F. Supp. 350, 354 (E.D.N.Y. 1997) (noting "delay in seeking enforcement of those rights ... tends to indicate at least a reduced need for such drastic, speedy action" and denying motion for preliminary injunction); and Klauber Bros. v. Lady Marlene Brassiere Corp., 285 F. Supp 806, 808 (S.D.N.Y. 1968) (holding where plaintiff waited one year to bring suit preliminary injunction should be denied).

Here, Donnelly delayed over six months since the O'Maras put him on notice on June 1 of their claim to ownership of the copyrights and nearly three months since the O'Maras

commenced this action and served Donnelly with the Complaint (through delivery to his counsel and acknowledgement of service). Such delay, for which Donnelly proffers no explanation, is inconsistent with any presently claimed need for preliminary relief.

Moreover, the O'Maras have agreed to maintain the status quo by agreeing to enter an appropriate stipulated protective/confidentiality order and to refrain from transferring, assigning, or using the copyrights until the expiration of a sixty period after providing notice of the intention to transfer, assign, or use the copyrights. In contrast, the O'Maras would be harmed by the entry of the requested injunctive relief, as Donnelly does not seek to maintain the status quo but instead asks this Court to order the O'Maras to transfer title of the very interests that are at issue – all on a preliminary basis without the benefit of any evidentiary hearings. Were the relief to be granted, the O'Maras would be deprived of their copyrights.

Accordingly, the balance of the harms mandates denial of the Motion.

WHEREFORE, the O'Maras respectfully request that the Court deny Defendants' Motion for Preliminary Injunction. In the event that the Court enters any injunctive relief, the O'Maras request that the Court require Defendants to post a bond in accordance with Fed. R. Civ. P. 65(c).

**PLAINTIFFS/DEFENDANTS-IN-COUNTERCLAIM,
PAUL O'MARA AND NEAL O'MARA**
By their attorneys,

/s/ Dale Kerester
Dale C. Kerester, Esq.
LYNCH, BREWER, HOFFMAN & FINK, LLP
101 Federal Street, 22nd Floor
Boston, MA  02110-1800
(617) 951-0800
dkerester@lynchbrewer.com

/s/ William E. O'Brien
William E. O'Brien, Esq.
Law Office of William E. O'Brien, Esq.
363 Bailey Road
Holden, MA  01520
(508) 829-5185
william@masstechlawyer.com

Dated:  January 3, 2006

**Certificate of Service**

I hereby certify that this document (and the Affidavit of Paul O'Mara and the Affidavit of Neal O'Mara) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 3, 2006.

/s/ Dale Kerester
Dale Kerester